CITY OF WEATHERFORD WATER, LIGHT & ICE CO. v. VEIT et al.
(No. 8624.)

(Court of Civil Appeals of Texas. Ft. Worth. April 28, 1917. On Motion for Rehearing, June 30, 1917.)

1. ELECTRICITY ⊚⇒19(5)—INJURY TO PERSONS —SUFFICIENCY OF EVIDENCE — NEGLIGENCE. Evidence *held* sufficient to show that an electric light company was negligent in maintenance of its high-voltage wires causing injury to a telephone lineman working on a pole adjoining that of the electric company.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11.]

2. ELECTRICITY ⊚⇒19(5)—INJURY TO PERSON —EVIDENCE—CONTRIBUTORY NEGLIGENCE. Evidence *held* insufficient to show that a telephone lineman was negligent in working near electric company's high-voltage wires.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11.]

3. MASTER AND SERVANT ⊚⇒206—SERVANT'S INJURY—"ASSUMED RISK" DISTINGUISHED FROM CONTRIBUTORY NEGLIGENCE. The defense of assumed risk as distinguished from contributory negligence rests upon implied contract on the part of the servant to assume the risk of all dangers ordinarily incident to the service in which he is engaged or from injury due to dangerous conditions surrounding the service of which the servant has notice or in the exercise of ordinary care should have known, which defense may exist in the absence of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 550.

For other definitions, see Words and Phrases, First and Second Series, Assumption of Risk.]

4. ELECTRICITY ⊚⇒19(12)—INJURY TO PERSON WORKING ABOUT WIRES — QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE. In an action by a telephone lineman for injuries resulting from coming in contact with defendant's high-voltage wires, the question of plaintiff's negligence *held* for the jury.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11.]

5. ELECTRICITY ⊚⇒18(1) — INJURY TO PERSON WORKING ABOUT WIRES—DUTY TO DISCOVER UNINSULATED WIRE. A telephone lineman working on a pole adjacent to that of an electric company was not required to discover fact that high-tension electric wires were uninsulated, where he had no knowledge of their dangerous character.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 10.]

6. MASTER AND SERVANT ⊚⇒231(1) — SERVANT'S INJURY—RELIANCE ON MASTER'S CARE —SAFE PLACE TO WORK. A telephone lineman could assume that his master had provided him with a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 675, 677.]

7. ELECTRICITY ⊚⇒18(2)—INJURY TO PERSON WORKING ABOUT WIRES — CONTRIBUTORY NEGLIGENCE. A telephone lineman could assume that defendant's high-voltage wires were fixed to its cross-bars in the usual and customary manner indicating dangerous or harmless nature of the wires.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 10.]

8. ELECTRICITY ⊚⇒19(5)—MASTER AND SERVANT ⊚⇒278(11)—SERVANT'S INJURY—SUFFICIENCY OF EVIDENCE—JOINT NEGLIGENCE OF EMPLOYER AND OTHERS. In action by telephone lineman for personal injuries caused by coming in contact with high-voltage wires, evidence *held* to show that both his employer and the electric company were negligent proximately contributing to his injuries.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11.]

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

9. CONTRIBUTION ☞5—JOINT TORT-FEASORS—GENERAL RULE.

It is a general rule that joint tort-feasors are not entitled to contribution, and in such cases the courts will generally leave the wrong-doers where it finds them.

[Ed. Note.—For other cases, see Contribution, Cent. Dig. §§ 6–9.]

10. INDEMNITY ☞13(2) — JOINT TORT-FEASORS—EXCEPTIONS TO RULE.

There is an exception to the rule denying contribution between wrongdoers under some states of fact where the negligence of one is passive as distinguished from the other's active negligence.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 31.]

11. INDEMNITY ☞15(7)—BETWEEN ELECTRIC COMPANY AND INJURED PERSON'S EMPLOYÉ—SUFFICIENCY OF EVIDENCE.

Evidence held sufficient to show that an electric company's negligence in maintaining its high-voltage wires in close proximity to telephone pole and in an unusual manner, causing a telephone lineman's injury, was merely passive as distinguished from his employer's active negligence warranting indemnity from employer to electric company for judgment rendered against the latter, where the high-voltage wires causing injury had been maintained before the erection of the telephone pole, and where the telephone company should have known of the danger, but without warning detailed the plaintiff to do the work in question, although the latter was unfamiliar with the surrounding conditions.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 44.]

12. APPEAL AND ERROR ☞1175(2)—DETERMINATION OF CAUSE — INDEMNITY BETWEEN TORT-FEASORS.

Where a telephone lineman has recovered judgment against his employer and an electric company as joint tort-feasors, judgment in electric company's cross-action against the telephone company for indemnity may be rendered by the Court of Civil Appeals under Rev. St. 1911, art. 1626, providing that such court may proceed to render such judgment as the court should have rendered, and where the matter was actually litigated in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4574.]

On Motion for Rehearing.

13. APPEAL AND ERROR ☞832(1) — REHEARING—RIGHT TO COMPLAIN—INDEMNITY.

A telephone lineman, having recovered damages against electric company for injuries resulting from coming in contact with high-tension wires, could not complain on rehearing of judgment of indemnity against his employer in favor of the electric light company where his own rights were unaffected, unless by reasons entirely outside the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3215–3218, 3220, 3223–3225.]

14. MASTER AND SERVANT ☞125(8)—KNOWLEDGE OF DANGER—IMPUTATION TO MASTER—HIGH-TENSION WIRES.

Knowledge of danger from high-tension wires in close proximity to telephone wires will be imputed to the telephone company where such condition had long continued, and because as matter of law it was telephone company's duty to know of such condition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 250.]

15. INDEMNITY ☞13(2)—TORT-FEASORS—NECESSITY OF JOINT LIABILITY.

The right of indemnification between joint tort-feasors presupposes that as to the person injured both defendants have been guilty of actionable negligence, since the party seeking indemnity must have been held liable to the third person for some negligent act or omission proximately causing the injury.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 31.]

16. INDEMNITY ☞13(2)—JOINT TORT-FEASORS—ACTIVE AND PASSIVE NEGLIGENCE.

In action for indemnity between joint tort-feasors, the vital question is whether the party seeking indemnity was merely guilty of passive negligence as distinguished from the other party's active negligence.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 31.]

17. INDEMNITY ☞15(9)—JOINT TORT-FEASORS—QUESTION OF LAW.

Where there is no conflict of evidence regarding the question of indemnity between joint tort-feasors, it is the trial court's duty to declare the law resulting therefrom.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 45.]

18. APPEAL AND ERROR ☞1175(2)—REVIEW—DUTY TO DECLARE LAW ARISING FROM UNDISPUTED FACTS—INDEMNITY.

Where the trial court failed to declare the law arising from undisputed facts regarding contribution between joint tort-feasors, it became the appellate court's duty to do so.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4574.]

19. APPEAL AND ERROR ☞768—RIGHT TO ACCEPT UNDENIED STATEMENT AS TRUE.

Where defendant did not deny in his answering brief that certain testimony stood uncontradicted as alleged by plaintiff, the appellate court will accept such statement as true in view of rule 41 (142 S. W. xiv), authorizing the court to do so in such cases.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3103.]

20. ELECTRICITY ☞19(5)—INJURY TO PERSON WORKING ABOUT WIRES — SUFFICIENCY OF EVIDENCE.

In a telephone lineman's action for injuries resulting from coming in contact with high-voltage wires, evidence held to show that the telephone company's pole on which he was working at the time of the injury was erected after the electric light company's pole adjacent thereto, and that at that time the electric company's high-voltage wires were already in place.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11.]

21. ELECTRICITY ☞16(4) — ELECTRIC COMPANY'S DUTY IN RESPECT TO TELEPHONE COMPANY.

After erection of a telephone pole in close proximity to an electric light pole it became the electric company's duty to remove its high-voltage wires to the outer ends of its crossbeams for protection of telephone linemen and in accordance with the usual custom.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

22. MASTER AND SERVANT ☞119—EMPLOYER'S DUTY—HIGH-VOLTAGE WIRES.

An electric light company owes a duty to its employés to place its high-voltage wires on the outer ends of its crossbeams for their protection and in accordance with the usual practice.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 210.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**23. ELECTRICITY ☞16(5) — ELECTRIC COMPANY'S DUTY IN RESPECT TO TELEPHONE COMPANY—INSPECTION OF WIRES.**

After a telephone pole was erected in close proximity to electric light pole, it was the electric company's duty towards the telephone company's employés to inspect insulation of its high-tension wires.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

**24. INDEMNITY ☞13(2)—JOINT TORT-FEASORS —NATURE OF LIABILITY.**

The nature of liability authorizing indemnity between joint tort-feasors depends on the difference of the character of the wrongs causing injury, and not on the comparative negligence of the parties.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 31.]

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Suit by Alvin Veit and others against the City of Weatherford Water, Light & Ice Company. Judgment for plaintiffs, and defendant appeals. Affirmed in part, and reversed and rendered in part. Motion for rehearing overruled.

H. C. Shropshire and Hood & Shadle, all of Weatherford, for appellant. Theodore Mack and R. L. Carlock, both of Ft. Worth, and W. S. Bramlett and J. D. Frank, both of Dallas, for appellees.

CONNER, C. J. The appellee Alvin Veit instituted this suit for damages arising from injuries to his person against the city of Weatherford Water, Light & Ice Company, hereinafter referred to as the Light Company, alleging, briefly, that on the 8th day of February, 1915, he was an employé of the Southwestern Telegraph & Telephone Company, hereinafter referred to as the Telephone Company, as one of its linemen; that the Telephone Company had occasion to make some repairs on its line in the city of Weatherford, and directed him to go to that point from his residence in Ft. Worth, Tex., to assist in making the repairs; that in order to make the required repairs it became necessary for him to ascend one of the poles of the Telephone Company supporting a wire cable attached to a cross-arm near the top of the pole, which was some 25 to 30 feet above the pavement; that after having ascended to the top of the pole, and in descending therefrom, he came in contact with a high-tension, uninsulated wire of the Light Company, and was thereby so shocked and paralyzed as to be unable to release himself; and that upon having been released from contact with the high-voltage wire by another he fell to the pavement below and was seriously injured. It was alleged that the Light Company had erected and maintained its pole supporting the high-tension wire in close proximity to the telephone pole; that the light pole was some 8 to 12 feet lower than the telephone pole; that the high-tension wire of the Light Company had been fixed and maintained upon the inner instead of the outer portions of the crossbar, which was carrying the Light Company's wires; that in so fixing and maintaining said high-voltage wire in such proximity to the telephone pole the Light Company, in order to prevent its said high-voltage wire from coming in contact with the telephone pole, had attached to the telephone pole a bracket to which the light wire was attached, and which had the result of placing the wire but a few inches from the telephone pole and a few inches below an iron step fixed to the telephone pole for the use of the employés of the Telephone Company in ascending and descending the pole carrying the telephone wires. It was charged that the Light Company was negligent in all of these particulars.

The appellant company answered by a general denial, plea of contributory negligence on appellee's part, and specially alleged, among other things, that its said light pole had been erected on the streets of Weatherford under the direction of that city many years prior to the time that the telephone pole in question was erected; that its said light wire had been attached to the bracket fixed to the telephone pole for the protection of the telephone pole and had been long known to the Telephone Company; that there had been an understanding and agreement between the Light and Telephone Companies whereby the Light Company would shut off the current of electricity upon its wires when employés of the Telephone Company were required to make repairs upon its wires; that upon the occasion in question, if it was dangerous under the circumstances for the plaintiff to have ascended the telephone pole mentioned in his pleadings, the Telephone Company well knew of the fact, and, so knowing, made no request for the electric light current to be shut off; and that it, hence, was negligence on the part of the Telephone Company to so erect its pole and direct repairs, without such request, upon the pole in such close proximity to the light wire. For these reasons it was alleged that the injuries to the plaintiff were proximately caused by the negligence of the Telephone Company, and the Telephone Company was accordingly made a party with defendant, with prayer on the part of the Light Company that whatever judgment, if any, against it might be rendered in favor of plaintiff might also be rendered in its favor over against the Telephone Company.

The case was submitted to a jury upon special issues, and upon the return of the verdict, which was generally in favor of plaintiff upon all issues, the court entered a judgment for the plaintiff against the appellant Light Company for $1,850, with interest thereon from the 9th day of May, 1916, at the rate of 6 per cent. per annum with all costs of suit. The judgment was also

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

against the appellant company and in favor of the Telephone Company on the former company's cross-bill, and the Light Company has appealed.

There are, as it seems to us, but two serious questions presented. The first is whether the verdict of the jury in favor of the plaintiff on the issue of his contributory negligence is supported by the evidence; and the second is whether, under the undisputed evidence, the appellant company was entitled to a judgment over against the Telephone Company on its cross-plea, and these questions will be disposed of in their order.

We will not set out the evidence at length. It has been carefully considered, however, and, in substance, is sufficient to support the following conclusions: That the plaintiff had been in the employ of the Telephone Company for several years and was what was termed as an experienced lineman; that he lived in the city of Ft. Worth, and went to Weatherford upon the occasion in question in response to the orders of his foreman, a Mr. Holmes; that the cables and wires of the Telephone Company had become deranged by reason of a recent fire, and that as part of the duties of his employment the plaintiff was required to ascend the pole in question in order to test and repair the telephone wires; that the plaintiff was unacquainted in the city of Weatherford, and unacquainted with the precise condition and arrangement of the electric light wires, although he knew such wires were in existence and being maintained upon the Light Company's poles. He could also see the location of the several poles mentioned, and could see and have observed the arrangement of the electric light wires and could, had he looked with that end in view, have seen and observed the proximity of the light wire to the telephone pole and to the iron bracket thereon situated. He was without knowledge or information, however, that the Light Company carried its high-tension wires on the inner portions of its crossbar; the general custom being to carry wires of high voltage on the outer ends of the crossbars so as to remove such high-voltage wires from easy contact on the part of employés in ascending or descending its poles. The plaintiff at the time had not been warned or notified that the electric light high-tension wire was carried on the inner portion of its crossbar, or that the high-voltage wire had been attached by a bracket to the telephone pole, or that the high-voltage wire was without insulation at that point, and he in fact testified that he did not know these things at the time that he ascended the pole, although, as stated, had he examined the wire for the purpose of ascertaining, he could, and doubtless would, have noticed the attached wire, and could, and doubtless would, have noticed the want of insulation. In this respect, however, he stated that in going up the telephone pole, which he did safely, he did not notice that the electric light wire was uninsulated and in fact did not know that it was a high-voltage wire. He testified that after he ascended the telephone pole, which was some 8 to 12 feet higher than the light pole, his foreman, Holmes, called to him in answer to which he undertook to descend the telephone pole; that he had attached to each leg the usual iron spur worn by employés to aid them in ascending and descending poles; that on the telephone pole affixed to the north and south sides thereof were iron steps from some 8 or 10 feet from the bottom of the pole to near the top; that the steps were about 3 feet apart; that when on the occasion under consideration he undertook to descend he grasped with his left hand what is termed the "stell messenger" that supported the cable of the telephone wires and started to swing himself underneath the cable in order to go down the center of the pole; that in doing so he swung his body to the south with his right foot at an angle toward the second iron step from the top, whereupon, to use his expression, "the electricity grabbed" him and he was unable to turn loose. The evidence further shows that he remained transfixed to the high-voltage wire of appellant company until Mr. Holmes, in answer to the screams of the appellee, ran and ascended the pole and removed the appellee's foot from the contact wire, whereupon appellee fell to the pavement below, as heretofore stated. There is evidence tending to show that the high-voltage wire of appellant company had been, by the Light Company, attached to the telephone pole on a bracket, as alleged, within 2 inches of the iron step which the appellee was evidently intending to reach when his foot came in contact with the high-voltage wire. The evidence does not make certain whether plaintiff's foot or the iron spur with which it was equipped came in contact with the high-voltage wire before the plaintiff's foot reached the step, or whether his foot reached the step and therefrom slipped upon the wire.

[1, 2] The jury found that the appellant company was guilty of negligence in the manner in which it carried its high-voltage wires upon its crossbeams, and was also guilty of negligence in attaching its high-voltage wire to the telephone pole, and in maintaining it without insulation, and that such negligences proximately caused plaintiff's injuries, and in these respects it cannot be doubted that the evidence supports the verdict, and while appellant has cited a number of very strong cases tending to show that the plaintiff was guilty of contributory negligence in ascending and descending the pole, yet we do not feel able to say that the evidence in this case, as a matter of law, requires that conclusion. Each case is dependent upon its particular circumstances and must be judged thereby.

[3] And in determining the question presented in the present case it will be well not to confuse the doctrine of assumed risk with

that of contributory negligence. The defense of assumed risk rests upon an implied contract on the part of the servant entering the service of his master to assume the risk of all dangers ordinarily incident to the service in which he is engaged, or from injury due to dangerous conditions surrounding the service of which the servant had notice, or in the exercise of ordinary care should have known. This defense may exist even in the absence of contributory negligence. As said in the case of H. E. & W. T. Ry. Co. v. McHale, 47 Tex. Civ. App. 360, 105 S. W. 1149:

"One may be so careful as to be entirely free from negligence in the manner in which he performs his work, and yet because of the danger necessarily incident to the work, or due to conditions within his knowledge or of which he must have known, had he exercised ordinary care, he cannot recover for injuries while in the performance of such work on the ground that he has assumed the risk of such injuries."

[4] But in the case before us the question, as against the appellant Light Company, is not one of assumed risk, for the appellee was not one of its employés, and hence no contract, express or implied, between these parties existed. As between them, the question is one of contributory negligence purely, and, as is generally true, one for the determination of the jury.

[5, 6] It is true under the evidence that appellee might, had he made an inspection to see, have ascertained the fact that the Light Company's wires were attached to the telephone pole, and might have discovered the fact that the wire was uninsulated, but he was not required to make such inspection. He had a right to assume that his master, the Telephone Company, had provided him with a safe place to work. He had no means of knowledge, and there is no evidence tending to show that he had knowledge, that the electric light wire, even had he observed its position on the telephone pole and had known of its uninsulated condition, was one of high voltage.

[7] It cannot be said that in the exercise of due care for his own safety he might not assume that the high-voltage wires of the Light Company were affixed to its crossbars in the usual and customary manner, and which, if such had been the case, would have indicated that the wire which resulted in the injury was one of harmless voltage. Appellant insists that appellee was warned, but we find in the evidence no warning other than a general one given to be careful of live wires. There is no evidence that appellee was specifically warned that upon the pole in question the Light Company had attached a high-voltage wire that was uninsulated, and there is nothing in the evidence which, as we feel, requires us to say that the appellee was not truthful in declaring that he did not observe this wire nor its condition in ascending the pole. He declares that he was facing west ascending a pole some 12 inches in diameter at the bottom, tapering to 7 inch-

es at the top; that in ascending the pole after having reached the iron steps he was required to swing his body first to the north and then to the south; that upon his person he had his iron spurs, his safety belt, buzzer, and operating tools, and was so intent upon his work that he did not observe the wire. On the whole we conclude that the evidence supports the jury's finding in appellee's favor on the issue of his contributory negligence, and that all assignments of error raising this question should be overruled. As fortifying the conclusions so announced, it may not be amiss to cite the following authorities: Planters' Oil Co. v. Keebler, 170 S. W. 120; Hill v. Union Electric Light & Power Co., 260 Mo. 43, 169 S. W. 345; Ry. Co. v. Arey (Sup.) 179 S. W. 860; Frantz v. Citizens' Electric Co., 231 Pa. 589, 80 Atl. 1106.

[8-10] On the other question mentioned our judgment is in favor of the appellant company. It is true that under the evidence and the findings both the Light Company and the Telephone Company were guilty of negligence in the particulars charged, which proximately contributed to the injuries suffered by the appellee Veit, and it is also a general rule, as insisted by the appellee Telephone Company, that joint wrongdoers or tort-feasors are not entitled to contribution; that in such cases generally the courts leave the wrongdoers responsible for an injury just where they find them. But to this general rule there are exceptions. Our Supreme Court, in the case of Railway Co. v. Railway Co., 83 Tex. 510, 18 S. W. 956, thus notices the distinction. It was there said:

"The rule is far from being universally true that there can be no contribution between wrongdoers. It prevails in that class of cases denominated as intentional torts or wrongs. But there are cases where, although the wrongdoers in contemplation of law may all be liable to the party seeking redress, yet as between themselves some of them may be blameless. It is on this principle that their equity to require the others to respond is complete."

The same court in the case of City of San Antonio v. Smith, 94 Tex. 271, 59 S. W. 1109, again refers to the subject in the following language:

"It is well settled that under some states of fact two parties may be liable to another for a tort, the one by construction of law, on account of some omission of a duty of protection or care owed, and the other because he is the active perpetrator of the wrong, and that in such case the right of indemnity may exist in the one whose wrong was only a secondary one."

In the case of Austin Electric Ry. v. Faust, 133 S. W. 449, the Court of Appeals for the Third District declared that:

"Where one person has by his negligence brought about a condition, and another person is guilty of negligence in not recognizing and acting upon such condition, and a third person, without negligence, is injured by reason of the negligence of the two persons, if the negligence of one was merely passive, or such as only to produce the occasion, and the other negligent person was the active perpetrator of the wrong, the former may recover over against the latter, since, as between them, the negligence of the ac-

tive perpetrator of the wrong would be the proximate cause of the injury to the person whose negligence did no more than produce the condition."

In harmony 'with the principles so stated, our Supreme Court held in the case of City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518, that, while the city was liable to one injured in stepping in a hole which the city had negligently allowed to exist in a sidewalk on one of its streets, nevertheless the city might recover over against the person whose wrongful act caused the dangerous condition in the sidewalk. See, also, on the same subject the case of Washington Gaslight Co. v. District of Columbia, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712, and the decisions cited in the note to that case.

[11] Applying the principles so stated, we are of the opinion that the undisputed evidence shows that the Telephone Company, and not the Light Company, was the active wrongdoer in the present case. The evidence shows without dispute that the Telephone Company erected its pole in close proximity to that of the Light Company. Both companies did business in the same town for many years. The agents and employés of the Telephone Company, as well also as those of the Light Company, must have known of the arrangement and location of the Light Company's high-tension wires on its crossbars, and of the location and arrangement of the high-tension wire with which the appellee Veit came in contact, and with the fact of its uninsulated condition, for neither company could escape the duty of proper inspection, and any sort of inspection would have developed the location of the wires and of the uninsulated condition of the high-voltage wire; for this wire had been, according to the undisputed testimony, attached to the telephone pole some four or five years. It was the duty of the Telephone Company undoubtedly to furnish its said employé with a safe place to work, and it was active negligence on its part to send such employé into the dangerous position up among its wires without specific warning of the location and uninsulated condition of the high-voltage wire with which Veit came in contact, and without notification to the employés of the Light Company that it, the Telephone Company, was about to repair its lines and to request that the Light Company, as the evidence shows it would have done, cut off its current. On the part of the Light Company the negligence seems merely passive. In maintaining its uninsulated high-voltage wire as it did do upon the telephone pole it merely created the dangerous condition. The wire might have so remained and been maintained without injury to any one indefinitely in the absence of necessity on the part of the Telephone Company to repair its wires, and for one of its employés to ascend that particular pole, and so the dangerous condition might have remained harmless by due warning on the part of the Telephone Company to its employés when directed to ascend the pole, or the dangerous condition might have been entirely removed by a request to cut off its power. Nor, as we think, can it be said from the evidence that the act of the Light Company in fastening its wire to the telephone pole in the manner it did increased the danger beyond that caused by the act of the Telephone Company in erecting and maintaining its pole in such close proximity to the pole and wires of the Light Company. On the contrary, the evidence tends to show that in the absence of the bracket, the light wire would have approached very closely to, if not entirely up against, the telephone pole, and that the bracket was placed against the telephone pole and the wire fastened to the bracket for the purpose of extending the light wire away from the telephone pole. For aught that appears, had the Light Company taken no care in this respect whatever, the wire in question would have been just as near and possibly nearer the iron step on the telephone pole than it was left when fastened to the bracket. So that the negligence of the Light Company in fact consisted merely in its failure to inspect the wire and thus ascertain its uninsulated condition, and in its failure to reinsulate or otherwise protect the wire against possible contact with employés of the Telephone Company in ascending the pole, should occasion require. We therefore are of opinion, as before stated, that as between the Light and Telephone Companies the latter was the active wrongdoer, and that under the undisputed facts the Light Company was entitled to judgment as it prayed for over against the Telephone Company. In the note to the United States Supreme Court decision hereinbefore referred to cases are cited to the effect that a judgment in favor of an injured party against the passive wrongdoer is, when due notice has been given to the active wrongdoer, conclusive as to the amount of damages and other matters necessarily involved in the litigation.

[12] We also have a statute (Revised Statutes 1911, art. 1626) which provides that:

"When the judgment or decree of the court below shall be reversed, the court [of Civil Appeals] shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed, is uncertain," etc.

We therefore conclude that, inasmuch as the Telephone Company had due notice of this suit and of appellant's cross-action against it, and had opportunity to and actually did litigate the questions, and inasmuch as we are of the opinion that as between these parties the judgment should be reversed, and that under the undisputed facts the appellant Light Company was entitled to the judgment over against the Telephone Company, as prayed for, that it should be now and here so

adjudged; the judgment below in all other respects being undisturbed.

The remaining assignments of error are not deemed to be material, and are overruled without discussion.

Affirmed in part, and reversed and rendered in part.

## On Motion for Rehearing.

Appellee Veit presents a motion for rehearing. The appellee the Southwestern Telegraph & Telephone Company likewise presents a motion for rehearing, and also a motion to correct our findings of fact. The motions referred to are lengthy and supported by able and exhaustive arguments by the counsel of the several parties, but in the interest of brevity we feel that we must for the most part dispose of them in a general way. So doing, we conclude that the motion to correct our findings of fact must be overruled. A re-examination of the case in the light of the motions for rehearing has indeed but confirmed us in the correctness of our original findings, as will, we think, hereinafter more particularly appear.

[13] With reference to the motion for rehearing by the appellee Veit, we will observe that we are unable to see from the record any such interest in him in the controversy between the Telephone Company and the Light Company as will authorize consideration of his complaint of our judgment. It is insisted:

That our judgment is prejudicial to his rights "in that an erroneous judgment has been rendered which necessarily interferes with and operates to delay the collection of the plaintiff's judgment as rendered in the trial court, and if not corrected by your honorable body may cause such an intolerable delay in the appellate tribunal, in view of the heavily crowded condition of their dockets, as to amount to an almost practical denial of justice to this appellee."

But this, as we can see, constitutes no valid reason. If our judgment is erroneous for other reasons, it should, of course, be set aside. But, if correct, it will not do to say that the Light Company shall be denied the right accorded to it by our judgment merely because appellee thereby may be delayed. Nor do we see how the judgment in favor of the Light Company over against the Telephone Company impedes the appellee Veit. By our action the judgment in appellee Veit's favor as rendered in the trial court was in all things affirmed, and there is no such interdependent relation between the cause of action alleged and maintained by him against the Light Company and that urged by the Light Company against the Telephone Company as prevents their severance and the entry here of a proper decree upon these several rights. If, as suggested in argument, a reason exists why the judgment in favor of the Light Company will be prejudicial to the judgment in favor of appellee Veit, such reason lies entirely outside the record, and cannot therefore be properly considered by us. We are accordingly of the opinion that appellee Veit shows no interest or concern that we can recognize in the decree in favor of the Light Company against the Telephone Company. However, this conclusion is perhaps of no practical importance in view of the fact that the motion for rehearing on the part of the appellee Telephone Company presents at great length substantially every objection, as it seems to us, arising upon the face of the record that is properly presented in appellee Veit's motion for rehearing. We will therefore address ourselves with more particularity to the objections urged by the appellee Telephone Company.

In substance, the principal contention, presented in various forms and with much force, is that we were in error in concluding that the negligence of the Light Company was not active, as contradistinguished from passive, and that hence the Light Company, being an active participant at least in the negligences which caused the plaintiff Veit's injuries, was not, under the authorities cited, entitled to the recovery we awarded in its favor against the Telephone Company. But a careful re-examination of the record has confirmed us in our original conclusions on this subject. It is true that the jury, in answer to one of the special issues, found that the Telephone Company was not negligent in failing to request the Light Company to shut off its power, but this finding is not thought to present an insuperable objection to our conclusions and judgment as originally announced. Assuming that the Telephone Company was without negligence in this particular, there yet remains the undisputed proof that the Telephone Company, through its directing agent, called from his home in a distant city one of its employés, Veit, who was unacquainted with conditions relating to the work he was called upon to do, and, having so called him, sent him up into and among conditions known to be dangerous, and which resulted in his injuries, without warning him of the conditions or danger. If this does not manifest active negligence on the part of the Telephone Company, we are wholly at fault in our judgment.

[14] That the dangerous conditions were known to the Telephone Company must be imputed to it, not only because, as a matter of law, it was its duty to learn and to know of them, but also as a necessary conclusion from the undisputed evidence of the long-continued existence of the very dangers developed on the trial. To so call and to so direct appellee to work in, about, and among such dangerous conditions without warning amounts, as we think, to affirmative, active wrong, as contradistinguished from the passive negligence of the Light Company in permitting the dangerous conditions to continue.

Great stress is laid upon the fact that in answer to special issues the jury found that

the Light Company was guilty of negligence in maintaining its high-voltage wire on the crossbeam, as it did, and also in maintaining its high-voltage wire in such close proximity to the pole and iron step of the Telephone Company, and that these several acts of negligence were each proximate causes of the plaintiff Veit's injuries. From this it is argued it conclusively appears that the Light Company was an active participant in the wrongs of which the plaintiff complains; in other words, that under such findings the Light Company was, and is, necessarily a joint tort-feasor with the Telephone Company, and therefore not entitled to indemnification.

It is true that as against the Light Company we sustained the several findings referred to in favor of the plaintiff, and we entertain no doubt as to the correctness of our conclusions in these respects. But this by no means is decisive of the rights of the Light Company as against the Telephone Company.

[15, 16] In every case of the kind it must be presupposed that as to the third party injured both defendants have been guilty of actionable negligence. There can be no such thing as a right of indemnification in cases of joint tort unless it be made to first appear that the defendant or tort-feasor seeking the indemnity has been held liable to some third person for some negligent act or omission proximately causing an injury. In all such cases, and in this case, the vital questions are: Was the party seeking indemnification guilty and held liable because of some mere omission to perform a duty, and was the negligence of the wrongdoer from which indemnity is sought affirmative and active as contradistinguished from mere omissive or passive negligence?

[17, 18] On these issues in this case there is no finding of the jury, nor did either the Light Company or the Telephone Company request the determination of any such issue; both alike thus, at least apparently, acquiescing in the failure of the court to so submit. Indeed, in the facts governing the questions referred to there was and is no issue or controversy necessary for a jury's determination. It became the duty of the trial court to declare the law arising from the undisputed facts, and, that court not having done so, for this court, as we did, to so declare. It is insisted, however, at great length and with much vigor, that the essential facts upon which we predicated our judgment over against the Telephone Company are not undisputed. But, as stated, after again carefully considering the evidence, we feel that we must adhere to our original conclusions, both as to law and fact. In deference, however, to the very earnest contentions of counsel in behalf of the Telephone Company, we will refer to the evidence with more particularity than has heretofore been done.

196 S.W.—63

Among other things, Henry Ward testified in behalf of the Light Company as follows:

"My name is Henry Ward; I live in Weatherford; have lived here about all my life, and I am 59 years old; have lived here about 59 years. I work for different men. I am working for the Water, Light & Power Company now. If my recollection serves me right, I commenced working for them in the spring of 1888, and have worked for them virtually ever since. I know when the poles of the Light Company were first set around the square here and over on the north side. I have done approximately a little of everything that was done about the Light Company place. I dug holes and helped raise the poles. I do not exactly remember when the telephone poles were set around the square here, relative to the time the Water and Light Company's poles were set. The telephone poles were set after the light poles."

The lengthy cross-examination of this witness in behalf of the Telephone Company failed to weaken the explicit statement of the witness on examination in chief that the telephone poles were set after the light poles. On the contrary, force to this statement was, if anything, added to it on cross-examination. He then said, among other things:

"I know it [the telephone pole which Veit ascended at the time of his injury] was not in my way when I was putting poles up; was not set at that time. If the telephone poles had been there, I could not have raised my poles. They were raised, every one, over my shoulder, them poles, and I could not have raised them. Even with our pole 10 or 12 feet shorter, I could not have raised it if that pole had been there."

On re-examination the witness further testified:

"I did not look after the setting of the poles for the Light Company. I helped set them; helped do the work. * * * I know by reason of setting the poles which line of poles was put up first."

The witness was thereupon recrossed in behalf of the Telephone Company, and he then said:

"I don't say I think the light poles were put up first. I know they were put up first. If the telephone poles had been there, I would have seen them when I put up the light poles."

In appellant's brief on the original submission the substance of the testimony of the above witness as above quoted is set out, and the following statement, referring thereto made, viz.:

"This testimony stands in the record of this case without contradiction."

[19] In the answering brief of the Telephone Company no denial of this statement is made which, under rule 41 (142 S. W xiv), authorizes us to accept the statement as true. Moreover, the record fails to disclose that the Telephone Company offered the testimony of the person or persons who placed its poles so as to show that they had been erected prior to the time the poles of the Light Company had been put up. Nor is there any explanation of why such witness or witnesses were not offered that has been called to our attention. All that on the motion for rehearing even the ingenuity and research of counsel has been able to assemble

are some circumstances of an inconclusive nature, such as that the Telephone Company acquired a franchise and paid taxes prior to the organization of the Light Company. But these circumstances are not followed by any evidence which tends to show that the Telephone Company installed its poles around the square in Weatherford and paid taxes upon its property after such organization and equipment before the erection of the light poles.

[20] We do not think the circumstances referred to amount to any contradiction of the testimony of the witness Ward, and we therefore reiterate and find as a fact that the Telephone Company erected the pole upon which Veit was hurt after the Light Company had erected its pole adjacent thereto and after the Light Company had already fixed in place on its crossbeam its high-voltage wires, as shown in the testimony.

[21, 22] In what respect, therefore, can it be properly said that the negligence of the Light Company was active rather than passive? It cannot be reasonably said that as between the Light and Telephone Companies the Light Company was guilty of negligence in originally placing its high-voltage wire on the inner portion of the crossbeam, instead of upon the outer portion. The duty of the Light Company in this particular was manifestly only due to its own employés, and while it may be properly said that later, upon the erection by the Telephone Company of its pole in close proximity, a duty arose on the part of the Light Company to remove its high-voltage wire to the outer end of its crossbeam, and that in failing to so do, and in maintaining the high-voltage wire as originally fixed, it was guilty of negligence, yet it seems clear to us that the failure of the Light Company in these respects amounts to mere omissions. In these particulars there was no affirmative act. They were mere failures to act, and therefore the negligence in these particulars was merely passive.

It is further insisted that the Light Company was guilty of active negligence in placing and in maintaining its high-voltage wire on the bracket by it attached to the telephone pole. But the evidence relating to this subject is to the effect that the telephone pole was erected within four or five feet of the light pole upon which the high-voltage wire was fixed; that the telephone pole was in such close proximity to this high-voltage wire after its erection as that the wire, if not in actual contact with the telephone pole, was so nearly so as that it became reasonably necessary, in order to protect the telephone pole, to fix the bracket, and thereon secure the high-voltage wire, as was done. To illustrate: James Lewis Ferguson testified, among other things, that for five years covering the periods involved in the controversy herein he was wire chief of the Telephone Company in Weatherford, and

that it was his duty to see that the plant was kept in working condition; that he was familiar with the construction of the lines and poles of the Telephone Company prior to February 8, 1915, in Weatherford; that prior to that time the City of Weatherford Water, Light & Ice Company had electric light wires attached to the telephone pole of the Telephone Company in Weatherford. He said:

"I have been knowing for a long time of this contact over here at the place of the accident; I don't know when was the first time I knew of it, but I will say after I began work here the last time, two or three years. Of my own knowledge it had been over there two or three years before the accident. One time there was a contact made by the Light Company on the poles of the Telephone Company at my suggestion and with my consent. That was at the Arlington Hotel. They had run a wire over in a dangerous condition, and the electric current came down the poles, being wet, and Carroll said he could not go down right then, and the only way they could clear it was to put a bracket on, and I gave him at that time a temporary permit to do that, that when it did clear up he would remove it, and he put it on there. I suppose the necessity for this contact in question at the time of the accident was that it was burning the pole in two, but I don't know; it was for the purpose of keeping the wire off the pole. If it hadn't been for that contact the electric wire would have come against the pole of the Telephone Company. That would not hurt it in dry weather. In wet weather it would have been liable to have burned the pole. The bracket was an advantage to the telephone pole. It prevented injury by contact with the wire."

It is insisted that in so fixing the wire on the bracket the Light Company was guilty of active negligence, in that by so doing it brought the wire more nearly to the iron step upon which it was necessary for the plaintiff Veit to step in ascending and descending the pole, the contention being that, in the absence of the bracket, the wire would have "sagged" and been lower down, but, as stated, the evidence is undisputed to the effect that the telephone pole was erected within some four or five feet of the light pole, and in the very nature of things within that distance the light wire could and would have sagged but little, if any. No witness testified that the wire would have sagged in the absence of the bracket and been lower. This is but a mere surmise. It is quite as probable under the evidence that by means of the bracket the wire was made to extend farther from the iron step instead of closer thereto. Moreover, while the evidence upon the trial and the finding of the jury was to the effect that at the time of plaintiff Veit's injuries the wire attached to the bracket was uninsulated, there is no evidence to show that it was without insulation at the particular time the wire was attached to the bracket. In other words, at the time of the performance of this act nothing, as we view the evidence, tends to show that thereby the Light Company was guilty of any active negligence.

[23] It may be admitted that thereafter it was its duty towards employés of the Telephone Company called to ascend the tele-

phone pole to inspect and to see that the wire was properly insulated, but a failure in this respect would be an act of omission, not of commission, and therefore negligence passive in its nature rather than active.

[24] Possibly we should notice the authorities so industriously gathered and cited in support of the motion, but they are so numerous, and in instances so actually or apparently conflicting as that it seems almost profitless to undertake to discuss them, and point out distinguishing features, give reasons for approving some of the decisions and disapproving others, etc. At best, each case is dependent upon its own particular circumstances. The fundamental rule to be applied, as it seems to us, is plain and easy of ascertainment. It is not a difference in degree, of the comparative negligence of the parties, but a difference in the character of the wrongs causing injury to some third party, which distinguish the respective rights and liabilities of tort-feasors as among themselves, and what we have said and the authorities cited in our original opinion we think sufficiently show a proper application of the rule, the distinguishing feature, to the facts of this case.

The motions of appellees are accordingly overruled without further discussion.