Elaine A. IANIRE, widow of Ronald Ianire, by her Next Friend, Glenn F. Owens, and Herman A. Ianire, Administrator of the Estate of Ronald Ianire, Plaintiffs,

v.

UNIVERSITY OF DELAWARE, Defendant and Third-Party Plaintiff,

v.

CITY OF NEWARK, a municipal corporation of the State of Delaware, George & Lynch, Inc., a Delaware corporation, and the Diamond State Telephone Company, a Delaware corporation, Third-Party Defendants.

Superior Court of Delaware.

New Castle.

May 29, 1969.

See also, Del.Super., 244 A.2d 427.

John E. Babiarz, Jr., James P. D'Angelo, Wilmington, for plaintiffs.

Frank O'Donnell, Stanley C. Lowicki, Wilmington, for City of Newark.

Clement C. Wood, Wilmington, for University of Delaware.

Hugh L. Corroon, Wilmington, for Diamond State Tel. Co.

Roger P. Sanders, Wayne N. Elliott, Wilmington, for George & Lynch, Inc.

BIFFERATO, Judge.

The University of Delaware ("University") is the defendant in a negligence action brought by the estate and by the widow of Ronald Ianire. The complaint alleges that Ianire was employed by the Diamond State Telephone Company ("Diamond"); that he was electrocuted while working on University's premises in connection with certain telephone services contracted for by University; and that Diamond is currently making Workmen's Compensation payments to his widow. The negligence charged consists of failure to provide a business invitee with a reasonably safe place to work, and failure to correct or give warning of a dangerous condition upon the premises. University, which denies that it was negligent, has joined Diamond as a third-party defendant on the grounds that its failure to inform University of the commencement of the work so that all necessary safety precautions might be taken renders it liable to indemnify University for any recovery had by the plaintiffs. Diamond seeks dismissal of the third-party complaint for failure to state a claim on which relief can be granted. This decision deals with Diamond's Motion to Dismiss.

■ Delaware has adopted the Uniform Contribution Act, which provides, *inter alia*:

For the purposes of this chapter, "joint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

10 Del.C. § 6301. The Act permits one tort-feasor to compel contribution from another toward the damages sought by the victim of their negligence, a right not recognized at common law. Where one tort-feasor is immune from suit by the victim, however, the other cannot compel contribution, because they are not both jointly or severally liable as the statute requires. Lutz v. Boltz, 9 Terry 197, 100 A.2d 647 (Super.1953); Ferguson v. Davis, 9 Terry 299, 102 A.2d 707 (Super.1954). Consequently, where an employee is injured by the combined negligence of both his employer and another, the employer will escape liability for contribution to the other tort-feasor due to his immunity under Workmen's Compensation laws from a direct action by the employee. Miller v. Ellis, 11 Terry 11, 122 A.2d 314 (Super. 1956). Moreover, the employer will be reimbursed from the proceeds of the employee's lawsuit against the other tort-feasor for any payments made to the employee under Workmen's Compensation; and if the employee delays in bringing such a suit, the employer may bring it in the employee's name notwithstanding his own culpability. Marciniak v. Pennsylvania RR. Co., 152 F.Supp. 89 (D.Del., 1957).

■ These cases make it plain that University cannot join Diamond as a third-party defendant in order to compel contribution from Diamond as a joint tort-feasor. However, University contends that its third-party complaint may be sustained on other grounds. If a contract between the parties is proven,[1] there may be an implied obligation to perform the work with due care. A breach of this duty by Diamond

1. Despite University's allegation in the complaint that it had not requested Diamond's services, the parties in oral argument assumed the existence of a contract, as admitted by University in its answer to plaintiff's complaint. This decision proceeds on the same assumption.

will have caused two injuries, which may be described thus:

> The one is toward the employee, and it is for this breach that Workmen's Compensation law bars any common law remedy. The other is toward the third party contractee, and among the damages flowing from the breach of this separate duty are any damages the third party may be forced to pay the employee because of their relation.

Larson, Workmen's Compensation & 76, 43 at 236–37. A suit by University for Diamond's breach of a contractual duty to perform the work with due care would thus rest on an entirely different basis than a suit brought under the Uniform Contribution Act. *Cf.* Fields v. Synthetic Paper, Inc., Del., 215 A.2d 427 (1965).

Even if a contract is not proven, there may still be an equitable obligation on Diamond to indemnify University. This obligation has been defined by the Restatement of Restitution as follows:

> Where a person has became (sic) liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattel, which was created by the misconduct of the other or which, as between the two, it was the others duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

Restatement, Restitution § 95. A suit by University seeking restitution from Diamond on these grounds would also rest on an entirely different basis than a suit for contribution between joint tort-feasors. The *Marciniak* and *Miller* cases would therefore not be controlling.

■ Whether or not a cause of action will arise on either or both of these grounds, is apparently a question of the first impression in Delaware. Diamond correctly represents Delaware law to be against contracts of indemnity relieving a party from liability for his own negligence. However, in none of the cases cited by Diamond was the alleged indemnitor guilty of any negligence. Instead, the damages seemed in each case to have been caused actively and solely by the party seeking indemnity. Here University is suing primarily for breach of a contractual duty to perform dangerous work with due care. The negligence of which it is allegedly guilty may well be of the most passive and morally unculpable kind. In similar situations the Courts of other jurisdictions have recognized a cause of action for indemnity.

A landmark case in which such recognition was given is Ryan Stevedoring Co. Inc. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). There an employee injured while unloading the third party's boat, recovered damages from the third party who then sought indemnity from the employer. The action was based on the theory that the employer had breached its duty to the third party to perform the work in a reasonably safe manner. The Supreme Court approved of the action, stating:

> Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product.

350 U.S. 133–134, 76 S.Ct. 232.

■ In the present case, where Diamond's services involved work in close proximity to high voltage current for which University was responsible, there can be little doubt that Diamond was under a duty to University at least to give notification of when and where the work would commence so that all proper precautions

might be taken. Safe procedures must be considered an essential part of electrical repairs and related services, just as safe design and materials are considered an essential part of manufacturing an inherently dangerous machine. Otherwise, accidents such as this will not be prevented; for a large institution such as University cannot be expected to make daily or even weekly inspections of its many circuits, nor should this trouble and expense be required of it when simply deenergizing the circuit would provide failsafe protection; and Diamond might not give proper notification of its presence, unless made responsible for its neglect to do so. The fact that University may be found negligent to Ianire dictates no different result, for as the Supreme Court said in *Ryan*:

> Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense.

350 U.S. 134, 76 S.Ct. 238. So here Diamond cannot use as a defense University's failure to discover the presence of Ianire in time to deenergize the circuit and prevent the accident.

Another case recognizing a cause of action for indemnity is City of Weatherford Water, Light & Ice Co. v. Veit, 196 S.W. 986 (Tex.Civ.App.1917). Unlike the *Ryan* case, however, this one was brought in tort for neglect of a non-contractual duty. A telephone lineman who had been electrocuted while repairing telephone lines recovered damages from the Light Company, which in turn sued the Telephone Company for indemnity. Apparently the injury was caused by an uninsulated electric wire running close to the telephone lines, a condition known to the Telephone Company, which had procured from the Light Company an agreement that the current would be shut off upon request whenever repairs to the telephone lines were necessary. The injured lineman had not been warned of the uninsulated line, nor had any request been made to shut the current off. The Court found that the Telephone Company's negligence was active, while that of the Light Company was passive, and indemnity was ordered. On reargument the Court drew a distinction between degrees of negligence and kinds of negligence. The negligence of the parties being different in kind rather than in degree, the usual rule that contribution would not be allowed between joint tort-feasors had no application; full indemnity was allowed for the entire amount recovered by the lineman.

A more recent case, on which Diamond relies in support of its Motion, but which in fact supports University's position, is Blockston v. United States, 278 F.Supp. 576 (D.Md.1968). The United States, having settled a claim against it by the estate of a deceased employee of a contractor, sought indemnification from the engineering company which had prepared the specifications being followed by the contractor when the accident occurred. The Court recognized that indemnification should be granted as between active and passive tort-feasors. But it found that the negligence with which the government was charged, and which formed the basis of the settlement, was failure to give warning of the dangerous situation created by the engineering company's specifications which the government had studied and approved. This failure instituted active negligence. Accordingly, indemnity was denied.

■ Comparison of these cases with the facts at hand indicate that University has made out a good claim for relief. For purposes of a Motion to Dismiss the well-pled allegations of the complaint are to be taken as established facts. Barni v. Kutner, 6 Terry 550, 76 A.2d 801 (Super. 1950). We may therefore assume that University would have deenergized the electrical system where necessary had it known of the impending work by Diamond.

Except for the fact that Diamond did not know of the specific hazard that killed Ianire, and had not obtained in advance University's agreement to deenergize the area, this case and the *Veit* case appear remarkably similar. University's negligence in not having known of and corrected a defect in the underground electrical system is of an even more passive character than that of the light company in *Veit*, which allowed a known dangerous condition to exist. Diamond's negligence was not as "active" as that of the Telephone Company in *Veit*, because Diamond did not have actual knowledge of the defect; but it is quite possible that a jury will find that Diamond should have known that its workmen would be working in the close vicinity of University's electrical system, and that its failure to request deenergization of the area, or at least to warn Ianire of the high voltage current present, was active negligence.

*Blockston* is of no aid to Diamond because, unlike the government in that case, University has not entered any settlement or had judgment entered against it on the basis of allegations of active negligence. On the contrary, University has in its third party complaint made allegations tending to show that its negligence was entirely passive. These allegations are that University had no knowledge of the defect, nor of Ianire's presence. This presents a marked contrast with the government in *Blockston*, which helped to prepare and approved the specifications responsible for the victim's death, and knew of his presence in the danger zone.

One of the best general definitions to be found of the theory underlying indemnity occurs in Anderson v. Liberty Fast Freight Co., 285 App.Div. 44, 135 N.Y.S.2d 559 (1954), where the Court said:

The area in which a party held liable for negligence may pass that liability on to another negligent party is closely circumscribed. It encompasses a group of special situations and relationships where it has seemed reasonable to impose an alternate responsibility on a party seen to have played the active role in the negligence situation in favor of one who is made answerable to the injured party, but whose part in the event is passive or arises from the effect of public policy, contract or status.

285 App.Div. 45, 135 N.Y.S.2d 560, 561. A more specific description is given in Hendrickson v. Minnesota Power & Light Company, 258 Minn. 368, 104 N.W.2d 843 (1960).

■ A joint tort-feasor may generally recover indemnity only in the following situations:

(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

(2) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

(4) Where the one seeking indemnity has incurred liability has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved.

104 N.W.2d 848.

■ Under the New York formulation of the doctrine, University would be entitled to indemnity because, in light of its passive negligence and Diamond's active negligence and Diamond's implied contractual duty to work with due care, it seems

reasonable to impose ultimate liability on Diamond. Under the Minnesota formulation, University is entitled to recovery on grounds (3) and (4). Other expressions of the doctrine, all leading to the same conclusion, may be found in the following cases and authorities: Union Stock Yards Co. of Omaha v. Chicago, B & Q R. Co., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453 (1905); Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 207 A.2d 732; Ambrosius Industries, Inc. v. Adams, 293 S. W.2d 230 (Ky.); Listerman v. Day & Night Plumbing & Heating Service, Inc., 384 S.W.2d 111 (Mo.App.); Ohio Fuel Gas Co. v. Pace Excavation Co., 187 N.E. 2d 89 (Ohio App.); Rufener v. Scott, 46 Wash.2d 240, 280 P.2d 253; Ingram v. Nationwide Mutual Ins. Co., 258 N.C. 632, 129 S.E.2d 222; Stewart v. Roosevelt Hotel, Inc., 170 So.2d 681 (La.App.); Jacobs v. General Acc. Fire & Life Assur. Corp., 14 Wis.2d 1, 109 N.W.2d 462, 88 A.L.R.2d 1347; Chicago & I. M. Ry. Co. v. Pillsbury Mills, Inc., 46 Ill.App.2d 373, 198 N.E.2d 126 (Ill.); Reid v. Royal Ins. Co., 80 Nev. 137, 390 P.2d 45; King v. Timber Structures, Inc., of Cal., 240 Cal.App.2d 178, 49 Cal.Rptr. 414; Tober v. Hampton, 178 Neb. 858, 136 N.W.2d 194 (Neb.); Lommori v. Milner Hotels, Inc., 63 N.M. 342, 319 P.2d 949; Kennedy v. Colt, 216 Or. 647, 339 P.2d 450; Gombar v. Schaeffer, 202 Pa.Super. 282, 195 A.2d 527.

Although a right of indemnity or contribution between tort-feasors has never been recognized at common law, the right of indemnity between passive and active tort-feasors does have common law origins. Pelkey v. State Sales, Inc. 210 F.Supp. 924 (D.C.Mich.); Perlbinder v. D'Aquilla Bros. Contracting Co., 12 Misc.2d 790, 177 N.Y.S.2d 878 (1958). The common law of England, including the concepts of unjust enrichment and restitution, from which the doctrine of indemnity derives, were made a part of the law of this State in 1776 by Article 25 of our first constitution. It therefore seems appropriate to conclude that Delware recognizes a right to indemnity as defined by the *Anderson* and *Hendrickson* cases.

Notwithstanding that University might ordinarily have a right to indemnity, Diamond contends that its recognition in these particular circumstances should be denied, otherwise the purpose of the Workmen's Compensation law will be destroyed.

The Workmen's Compensation law of this State provides:

Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by the provisions of this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies. 19 Del.C. § 2304;

(a) Where the injury for which compensation is payable under this chapter was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies, but such injured employee or his dependents or their personal representative may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section. If the injured employee or his dependents or personal representative does not commence such action within 260 days after the occurrence of the personal injury, then the employer or its compensation insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of such other person in the name of that person. Not less than 30 days before the commencement of suit by any party under this section, such party shall notify, by registered mail at their last known address,

the Industrial Accident Board, the injured employee, or in the event of his death, his known dependents, or personal representative or his known next of kin, his employer and the workmen's compensation insurance carrier. Any party in interest shall have a right to join in said suit.

(e) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the workmen's compensation act to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits. 19 Del. C. § 2363.

Diamond contends that these provisions insulate an employer from all liability for the injury or death of an employee, except as allowed by other provisions of Delaware's Workmen's Compensation law. Manifestly, if plaintiff recovers from University, and University is successful in obtaining indemnity from Diamond, the result will be the same as if plaintiffs had sued Diamond directly, a procedure which 19 Del.C. § 2304 clearly prohibits. In support of its position that Delaware Courts will not allow this result to be reached, Diamond cites the *Miller* and *Marciniak* cases, supra, which dealt with contribution rather than indemnity, and Hill v. Moskin Stores, Inc., 3 Storey 117, 165 A.2d 447 (Sup.1960), a case clearly not in point.

■ The question, again, is one of first impression for this State. Nothing in the language of the statute indicated that Uni-

versity is or should be prohibited from seeking indemnity from Diamond. It is only the employer and employee who are bound by the statute "to the exclusion of all other rights and remedies"; third parties are not bound. In other jurisdictions, indemnity has been allowed even in the face of more narrowly worded legislation.

■ A case by case analysis of this rapidly developing area of the law may be found in Larson, Workmen's Compensation § 76. Various rules have evolved in the federal and state courts of different jurisdictions, but essentially indemnity is allowed or denied depending on a combination of two factors. The first of these involves recognition of indemnity as a cause of action, irrespective of the existence of Workmen's Compensation laws. If the cause of action on the facts presented is not recognized, no recovery over is possible. An example of a case turning on this consideration is General Electric Co. v. Cuban American Nickel Co., (D.C.La.1968) an unreported decision appended to Diamond's reply brief.

The second factor involves construing the relevant statutory language. Frequently the Courts are confronted with the following:

"The liability of an employer prescribed by the last preceding section shall be exclusive and in place of any other liability whatsoever, to such employee, his personal representatives, husband, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death. * * *" N.Y.W.C.L. § 11.

Where the theory of indemnity on which the action is brought is based on tort rather than contract, some judges have thought that recovery was sought "on account" of the injury to the employee, and was therefore barred by the statute. Larson, Workmen's Compensation § 76, 30 at 234. An example of a case turning on similar

considerations[2] is A. O. Smith Corporation v. Associated Sales & Bag Co., 16 Wis.2d 145, 113 N.W.2d 562 (1962).

Neither of these factors prevents recovery in this case. University is entitled under common law principles to indemnity. The statute purports to affect the rights and remedies only of the employer and his employees. Under these circumstances, the leading decision in West Chester Lighting Co. v. West Chester County Small Estates Corporation, 278 N.Y. 175, 15 N.E.2d 567 (1938) seems persuasive. There an employee negligently broke a gas pipe for which the Lighting Company was responsible. As a result, gas escaped into a nearby house and there asphyxiated an employee who was in the course of his employment at the time. The employee's representative recovered damages from the Lighting Company, which in turn sought indemnity from the employer. Denying that Workmen's Compensation prevented recovery. The Court said:

> We think this position has no warrant in the text that has been quoted from the statute. Plaintiff does not sue for damages "on account of" Haviland's death. Plaintiff asserts its own right of recovery for breach of an alleged independent duty or obligation owed to it by the defendant.

> Nor does the policy of the statute countenance the defendant's position. "The act was passed pursuant to a widespread belief in its value as a means of protecting workingmen and their dependents from want in case of injury when engaged in certain specified hazardous employments. It was the intention of the Legislature to secure such injured workmen and their dependents from becoming objects of charity, and to make reasonable compensation for injuries sustained or death incurred by reason of such employment a part of the expenses of the lines of business included within the definition of hazardous employments as stated in the act. It was also the intention of the Legislature to make such compensation not only a part of the expense of the business and a part of the cost of things manufactured and of transportation as defined by the act, but ultimately to require such compensation to be paid by the consumer of the manufactured goods and by those securing transportation."

278 N.Y. 176, 15 N.E.2d 568.

 It is of course a strange result that an employer whose sole negligence harms his employee should bear only a moderate recovery under Workmen's Compensation, while an employer whose negligence in conjunction with that of a third party may have to bear either no recovery or an unlimited recovery, depending on whether the third party's negligence was active or passive. In light of the purposes of the Act, however, this result is not incomprehensible. One of the essential purposes of Workmen's Compensation was to place the cost of industrial injuries on the customers who enjoyed the benefits of industry. Since the employer occupies the best position to calculate the frequency and cost of injuries, to obtain insurance against them, and to pass this cost on to the customers, liability for injuries is placed on him. A concurrent purpose of the act was to protect employees from hardship during the period between his injury and a trial, from attorney's fees, and from the doctrines of assumption of risk, contributing negligence, and the fellow-servant rule. By providing for an automatic limited recovery under Workmen's Compensation, employers are guaranteed a certain and predictable liability for insurance purposes, and employees are guaranteed a certain amount of immediate compensation.

 The uncertainty enters only because of the rule which permits suits by the injured employee against negligent third parties. This rule has the virtue of preventing windfalls to culpable tort-

---

2. That statute was different than that quoted.

feasors. In the action against such a tortfeasor, all questions of negligence, including assumption of risk and contributory negligence, are considered. If the employee does not recover, then at least Workmen's Compensation prevents his bearing the entire loss. If he does recover, then it seems likely that he was without fault and entitled to full damages. The purpose of this rule is entirely distorted, however, when the third party is not morally culpable, and therefore would not obtain any windfall in absence of suit by the employee. Recovery by the employee in such a situation imposes an undue burden on a party whose negligence is at most technical, vicarious or passive, while the culpable party, i. e. the employer, goes completely free. It is to prevent such an injustice that University's right to seek indemnity against Diamond must be recognized. Of the various results possible, this seems closest to the spirit of the Act; for Diamond as the employer is best able to pass the cost on to the customers whom the legislature has determined ought ultimately to bear it.

Third-party defendant, Diamond State Telephone Company's Motion for Summary Judgment is denied.