**CORNING GLASS WORKS, Third-Party Plaintiff, Appellant,**

v.

**PUERTO RICO WATER RESOURCES AUTHORITY, INC., Third-Party Defendant, Appellee.**

**No. 7055.**

United States Court of Appeals First Circuit.

Heard April 30, 1968.

Decided June 5, 1968.

Victor House, San Juan, Puerto Rico, with whom Gonzalez, Jr., Gonzalez-Oliver & Novak, San Juan, Puerto Rico, was on brief, for appellant.

Carlos M. Diaz-Lamoutte, Puerto Rico, with whom Jose Vila Ruiz, Santurce, Puerto Rico and Jose Antonio Arabia, Puerto Rico, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from an order of the district court dismissing a third-party complaint brought by appellant Corning Glass Works (Corning) against appellee Puerto Rico Water Resources Authority (Authority) on the ground that, the plaintiff in the principal action against Authority, Corning and other alleged joint tortfeasors having allowed the statute of limitations to run as to Authority, any debt owed by Authority was extinguished, including any unripened liability for contribution to those who might be found to be joint tortfeasors.

On July 5, 1964, plaintiff, an engineer and a resident of Florida, was injured when a glass gauge allegedly manufactured by Corning broke during a liquid poison test at an atomic energy reactor plant in Puerto Rico. On May 26, 1966 he instituted suit against Authority (charged with maintenance of the plant), the United States, and several stateside corporations, including Corning, none of which was organized under the laws of Puerto Rico or had its principal place of business there. Authority moved to dismiss plaintiff's complaint as time-barred by the applicable one year statute of limitations, 31 L.P.R.A. § 5298, and the motion was granted.

Because the stateside corporations were "absent persons" when plaintiff's cause of action accrued, the one year statute of limitations was tolled as to them pending their "return" to the Commonwealth, 32 L.P.R.A. § 253. In June of 1965 Puerto Rico's "long-arm" statute, 32 L.P.R.A., App. II, Rule 4.7, became effective and, since the corporate defendants were amenable to process as of that date, the limitations period commenced to run. Proceedings having been instituted within one year of the effective date of the "long-arm" statute, suit against these defendants was timely.

On December 1, 1966, Corning filed a cross-claim against all but one of the other defendants to the original action and a third-party complaint against Authority alleging a right of indemnity and contribution as to each. Authority moved to dismiss arguing (1) that a right of indemnity was not asserted under any legal provision, law, contract obligation or duty toward Corning and

(2) that it could not be held liable for contribution in view of the original plaintiff's legal disability to sue it directly. The motion was granted. We reverse on the contribution issue.[1]

It is settled that the concept of joint and several liability exists in Puerto Rico, Rivera v. Great Am. Indem. Co., 70 P.R.R. 787, 790 (1950), as does the right of contribution among joint tortfeasors, Garcia v. Government, 72 P.R.R. 133, 141 (1951); 31 L.P.R.A. § 3110. Garcia also teaches us that while the right of contribution does not accrue before judgment is satisfied, an alleged joint tortfeasor defendant may at the outset of litigation implead all who by their concurrent negligence might be liable to him for contribution. Thus, absent other circumstances, Corning may implead Authority although any right of contribution which it may have against Authority will not accrue until judgment is rendered and plaintiff is paid.

We must decide how, if at all, plaintiff's legal disability to sue Authority directly affects this rule of law. The district court considered the disability fatal to Corning's third-party complaint and ruled that a third-party defendant would not be held "liable indirectly when such liability cannot be established directly by the original plaintiff in the main action."

In so holding, the district court recognized that it had to deal with Garcia but found a meaningful distinction in what it believed to be the fact there that plaintiff could have sued the third-party defendant directly at the time he filed the original suit. This fact, the district court said, had the effect of "freezing" the running of the limitations period,

while in this case the original plaintiff had lost its right to sue the third-party defendant); the action was thus extinguished, incapable of being revived "so as to mock the right acquired by the Authority."

As a matter of fact, however, while the plaintiff in Garcia could have sued the third-party defendant directly prior to giving him a release, the Commonwealth Supreme Court, when it first considered the case, noted that the release had been given prior to the filing of the main action so that plaintiff would have been "barred from amending his complaint to include a claim against the third-party defendant." Garcia v. Government, 70 P.R.R. 312, 319 (1949). The release in Garcia as effectively "extinguished" plaintiff's right to go against the third-party defendant as the running of the statute of limitations here. Moreover, to speak of the running of a statutory period against the original plaintiff as extinguishing the debt of a joint tortfeasor is to take a conceptual view that all remedies depend upon the continued existence of the original plaintiff's right to recover. But in law the right to contribution, while arising out of the same event which gives the plaintiff a right of action for damages for negligence, does not mature until one joint tortfeasor has made payment. Garcia, 72 P.R.R. at 141.

Wholly apart from the separate nature of the rights involved are the basic concerns of the courts to prevent any plaintiff from favoring one of several wrongdoers and directing "his action exclusively against him or them with whom he is not tied by bonds of relationship or friendship * * *." Garcia, supra at

---

1. Authority, relying on 28 U.S.C. § 2107 and Fed.R.Civ.P. 73, has argued that this appeal comes too late. Notice of appeal was not filed within thirty days of the lower court's order as required in matters involving private parties. However, since the United States is a cross-defendant in Corning's suit and, as an alleged joint tortfeasor with a potential right of contribution, is necessarily affected by the outcome of the controver-

sy here, we consider this to be a proceeding in which the "United States * * * is a party" so that the time for appeal "as to all parties" was sixty days. Fed. R.Civ.P. 73(a); United States v. American Society of Composers, Authors and Publishers, 331 F.2d 117 (2d Cir.), cert. denied, 377 U.S. 997, 84 S.Ct. 1917, 12 L.Ed.2d 1048 (1964); cf. Virginia Land Co. v. Miami Shipbldg. Corp., 201 F.2d 506 (5th Cir. 1953).

143. While the possibilities of collusion more readily come to mind in connection with the giving of releases, the court in Schott v. Colonial Baking Co., 111 F. Supp. 13, 23 (W.D.Ark.1953), correctly observed that:

> "There is little difference, if any, in permitting a plaintiff to select the defendant whom he might desire to collect from by intentionally or unintentionally forfeiting his right of action against one of the joint tort-feasors, as the plaintiff has done in the instant case, and in permitting a plaintiff to select the defendant by releasing his cause of action against another defendant. Stated differently, plaintiff's action in allowing the statute of limitations to run as against the third party defendants * * * was the equivalent of executing a release to the third party defendants and should not prevent the third party plaintiff from exercising its right of contribution." [2]

■ Accordingly, those courts which have considered the question have apparently taken the uniform position that

for purposes of impleader common liability need exist only at the time plaintiff's cause of action accrues and no later. E. g., Keleket X-Ray Corp. v. United States, 107 U.S.App.D.C. 138, 275 F.2d 167 (1960);[3] Globig v. Greene & Gust Co., 184 F.Supp. 530, 533 (E.D.Wis. 1960); Schott v. Colonial Baking Co., supra, 111 F.Supp. at 24. Each of these cases involves the running of a statute of limitations against an impleaded tortfeasor and each recognizes the distinction between common liability at the time of accrual and the absolute inability of an injured plaintiff to sue at any time the party sought to be impleaded. Cf. Goldberg v. Faull, 275 F.Supp. 96 (E.D. Tenn.1967); Martin v. United States, 162 F.Supp. 441 (E.D.Pa.1958). The Puerto Rico workmen's compensation cases cited[4] to us by appellee, premised as they are on an exclusive remedy theory, fall into this later category and accordingly do not control.

Judgment will be entered vacating the order of the district court and remanding the case for further proceedings consistent with this opinion.

---

2. It is the potential for abuse that is relevant to the determination of policy in matters such as this. For example, while seemingly remote, collusion was nonetheless possible in the case before us for although the "long-arm" statute did not become law until after the accident occurred it did become effective before the statute of limitations had run against Authority. Thus, in the one week remaining, plaintiff had the option of moving against Authority or of allowing the limitations period to expire.

3. The court in *Keleket* analogized the statute of limitations situation to its earlier opinion in Henry Fuel Co. v. Whitebread, 99 U.S.App.D.C. 9, 236 F.2d 742 (1956). In Henry the court held that an injured

party does not, by releasing one joint tortfeasor, terminate the rights of the defendant tortfeasor to contribution. Although the *Henry* rule was apparently abandoned in the later case of Martello v. Hawley, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962), in favor of one foreclosing a right of contribution and granting defendants a pro rata reduction of their liability, we think *Keleket* still sound and the release situation distinguishable for while formulas are to be encouraged which will stimulate out-of-court settlements, there is no comparable reason to protect the beneficiary of the running of a statutory period.

4. But, contrary to our rule, not provided in translation. 1st Cir.R. 28.