NEW ZEALAND KIWIFRUIT
MARKETING BOARD,
Plaintiff,

v.

CITY OF WILMINGTON, McFoy Refrigeration Company, Perley–Halladay Associates and Devault Refrigeration Services, Inc., Defendants.

Civ. A. No. 91–580–JLL.

United States District Court,
D. Delaware.

June 14, 1993.

David E. Brand of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE; James P. Krauzlis and Edward C. Radzick of Donovan Parry Walsh & Repetto, New York City, of counsel, for plaintiff.

Jeffrey S. Goddess of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE; James F. Young and Mary Elisa Reeves of Krusen Evans and Byrne, Philadelphia, PA, of counsel, for defendant City of Wilmington.

Raymond Cobb of Goldfein & Joseph, Wilmington, DE, for defendant McFoy Refrigeration, Inc.

John D. Balaguer of White & Williams, Wilmington, DE, for defendants Perley–Halladay Associates and Devault Refrigeration Services, Inc.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Defendant, City of Wilmington ("City"), has brought this motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking summary judgment against the crossclaims of codefendants, McFoy Refrigeration Inc., Perley–Halladay Associates, and Devault Refrigeration Services, Inc., (herein-

after "McFoy", "Perley–Halladay" and "Devault" or, collectively, "the codefendants"). (Docket Item ["D.I."] 71.) On October 22, 1991, plaintiff, New Zealand Kiwifruit Marketing Board, commenced this action seeking damages for the loss in value of a shipment of kiwifruit which was partially destroyed while in a port-warehouse facility operated by defendant, City of Wilmington. (D.I. 1 at 3.)

On June 22, 1992, defendant, City of Wilmington, filed a motion for summary judgment with this Court arguing that all of plaintiff's claims against the City were barred by a one-year statute of limitations included in the general tariff of the Port of Wilmington, and, alternatively, that any tort claim against the City would be barred by the County and Municipal Tort Claims Act (the "Tort Claims Act"), 10 *Del.C.* §§ 4010 et seq. (D.I. 38.) This Court filed a memorandum opinion and order on September 29, 1992, granting that motion (D.I. 57 and 58); the Court based its decision on the one-year statute of limitations included in the general tariff of the Port of Wilmington—which tariff the Court held constituted the applicable contract between the New Zealand Kiwifruit Marketing Board and the City of Wilmington. *New Zealand Kiwifruit Marketing Board v. City of Wilmington,* 806 F.Supp. 501 (D.Del.1992). Since the Court based its decision on the statute of limitations, it never reached the question of the Tort Claims Act.

Each codefendant has filed crossclaims for both contribution and indemnification. Those crossclaims failed to state the legal grounds upon which their claims for indemnification were based. However, in their brief, Perley–Halladay and Devault[1] stated that their "crossclaims for indemnification arise from a common-law right to indemnification in tort and an implied or quasi-contractual right to indemnification in contract." (D.I. 75 at 8.) It is apparent from McFoy's brief that it has based its claim for indemnification solely in tort; McFoy has not asserted an implied-in-contract theory. None of the codefendants has asserted a claim based upon express contractual indemnification.

In the present motion, the City argues, *inter alia,* that the Tort Claims Act bars both the contribution and the indemnification-in-tort crossclaims and that all indemnification claims are inapplicable to the situation at hand. Thus the City argues it is entitled to summary judgment on those crossclaims as a matter of law. Codefendants, McFoy, Perley–Halladay and Devault argue that the contribution and indemnification in tort claims are not barred by the Tort Claims Act because they fall into two of the statutory exceptions to the Act, namely: the "equipment" exception and/or the "public building" exception. 10 *Del.C.* § 4012(1) and (2). In addition, Perley–Halladay and Devault maintain that the quasi-contractual theory of indemnification is applicable to this case. For the reasons stated below, this Court finds that the claims in this case do meet the requirements of the "public building" exception to the Torts Claims Act as recently set forth by the Delaware Supreme Court, and thus this Court will deny the City of Wilmington's motion for summary judgment on the contribution crossclaims. For the reasons stated below, this Court also finds that none of the indemnification claims that have been asserted by the codefendants against the City are applicable to the facts of this case and thus will grant summary judgment to the City on the indemnification claims.

The Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. § 1332 and the Court has jurisdiction over the crossclaims pursuant to 28 U.S.C. § 1367.

## II. FACTS

The facts regarding the spoilage of the kiwifruit are set out in more complete detail in an earlier opinion. *New Zealand Kiwifruit Marketing Board v. City of Wilmington,* 806 F.Supp. 501 (D.Del.1992). For the purposes of this motion the relevant facts are as follows. On or about July 5 or 6, 1990, plaintiff's shipment of 2,961 pallets of fresh kiwifruit arrived at the Port of Wilmington and were placed in the Port's refrigerated storage facilities; it is undisputed that the

1. Perley–Halladay and Devault submitted a joint brief in opposition to defendant City of Wilming-ton's motion for summary judgment on the cross-claims. (D.I. 75.)

Port and its storage facilities are owned and operated by the City of Wilmington. The City of Wilmington allegedly has contracts with codefendants for various services regarding the refrigeration facilities, in particular, codefendants provide "refrigeration installation, maintenance, temperature control and monitoring services in connection with the refrigerated areas of the storage facilities operated by the City of Wilmington." (D.I. 1 at ¶ 12; D.I. 8 at ¶ 12; D.I. 4 at ¶ 12.)[2]

Plaintiff alleges that although the Port had been instructed to keep the kiwifruit at a temperature of not less than 32 degrees Fahrenheit, on or about July 9, 1990, 200 of the pallets of kiwifruit were cooled to a temperature of approximately 25 degrees Fahrenheit and were thereby destroyed.

While the plaintiff's original complaint alleges claims against defendant, City of Wilmington, for breach of contract, breach of bailment and negligence,[3] plaintiff's complaint alleged only negligence claims against the codefendants. (D.I. 1 at ¶ 14.) Devault and Perley–Halladay answered plaintiff's complaint by denying negligence and initiating crossclaims against both the City of Wilmington and McFoy for contribution pursuant to the Contribution Among Tortfeasors Law, 10 Del.C. § 6301 et seq., and for indemnification. (D.I. 2 at ¶¶ 16 & 17; D.I. 4 at ¶¶ 16 & 17.) McFoy answered plaintiff's complaint by denying negligence, initiating crossclaims against Perley–Halladay, Devault and the City of Wilmington for contribution and indemnification and stating that it "is entitled to have the relative degrees of fault determined in accordance with Title 10, Chapter 63, of the Delaware Code." (D.I. 7 at 6.)

On January 12, 1993, defendant, City of Wilmington, filed a motion for summary judgment against the crossclaims stating: (1) that because this Court had dismissed the plaintiff's claim against the City, the City could not share a common liability to the plaintiff with the other defendants and thus could not be liable for contribution; and (2) that the County and Municipal Tort Claims Act, 10 Del.C. § 4011(a), also bars the crossclaims for contribution and indemnification. (D.I. 71.)

The codefendants requested permission to make their opposition to City of Wilmington's motion by incorporating the arguments regarding the Tort Claims Act made by plaintiff, New Zealand Kiwifruit Marketing Board, in opposition to the City's first motion for summary judgment. The Court, by letter, granted permission to incorporate plaintiff's arguments regarding the Tort Claims Act but requested that briefs be submitted which fully addressed the contribution and indemnification issues. (D.I. 73.) The parties have since complied with the Court's request. (D.I. 74; D.I. 75; D.I. 76; and D.I. 78.)

Although the City of Wilmington has moved for summary judgment on all crossclaims of all codefendants, there is an overlap in both the theories and the alignment of codefendants in opposition to the motion. Accordingly, the Court will first address the crossclaim of contribution against all codefendants followed by the crossclaim for indemnification in tort as it applies to all codefendants. As a final matter, the Court will address the implied contractual indemnification crossclaim of codefendants Perley–Halladay and Devault.

## III. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if

---

2. The record is unclear as to which company allegedly had responsibility for which service. Perley Halladay answered the complaint by admitting that it had installed the refrigeration and stating that it had done so in a workmanlike manner. (D.I. 4 at ¶ 12.) Devault also answered the original complaint by admitting that it was involved with refrigeration installation but denying any involvement with "maintenance, temperature control, and monitoring services." (D.I. 2 at ¶ 12.) McFoy answered the complaint by denying the allegation as stated, but apparently, from the arguments in its briefs, McFoy does not deny that it had contracts with the Port for some services relating to the refrigeration.

3. Plaintiff's complaint also contained allegations of fraud and conversion which have since been withdrawn. (D.I. 53 at 4, note 1.)

any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The appropriate inquiry is whether there is a need for a trial. "In other words, [are] there any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment it is the party seeking summary judgment who bears "the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 56).

## IV. CHOICE OF LAW

■ A Federal District Court sitting in diversity must apply the choice-of-law rules of the state in which it sits to determine which state's substantive law governs the controversy before it. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, this Court must apply the State of Delaware's choice-of-law rules. The claims before the Court at this time are rooted predominantly in tort although there is an implied-in-contract indemnification claim. Since, for the reasons stated below, this Court finds that Delaware choice-of-law rules provide for the application of Delaware substantive law for both tort and contract issues, the Court finds it unnecessary to determine, at this time, whether a claim for implied contractual indemnification is a creature of contract or tort.

■ In determining choice of law in tort actions, Delaware has adopted the "most significant relationship test" of the Restatement (Second) of Conflicts §§ 6, 145, 146. *Travelers Indemnity Co. v. Lake*, 594 A.2d 38, 44–47 (Del.1991).[4] In applying the "most significant relationship test," in tort cases, Delaware courts place considerable emphasis on "the place where the injury occurred" and "the place where the conduct causing the injury occurred." *Id.* at 47. Moreover, the Delaware Supreme Court has directed Delaware courts to apply the law of the state where the injury occurred unless another state has a more significant relationship to the occurrence and the parties. *Id.* Since both the injury and any alleged negligence which may have caused it occurred in Delaware, application of the "most significant relationship test" to the present case indicates that Delaware law would govern. In addition, none of the parties have argued, nor does this Court suggest, that any other state might have a more significant relationship to the occurrence or to the parties than Delaware. Thus, Delaware's choice-of-law rules mandate that Delaware substantive law governs the tort claims in this case.

■ Delaware courts also apply the "most significant relationship" test of the *Restatement (Second) of Conflicts* § 188 (1971) to resolve conflicts issues in contract cases. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41 (Del.1991). That approach "indicates that the laws of the jurisdiction which had the most significant relationship to the transaction and parties would control the substantive legal questions." *National Union Fire*

---

4. The "most significant relationship test," requires a court to determine which state has the most significant relationship to the matter at hand by considering the following factors:
 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.
*Travelers Indemnity Co.*, 594 A.2d at 47.

*Ins. Co. v. RLC Corp.*, 449 A.2d 257, 261 (Del.Super.1982). In applying the "most significant relationship test," in contract cases, Delaware courts place considerable emphasis upon "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location and subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Playtex Family Products, Inc. v. St. Paul Surplus Lines Ins. Co.*, 564 A.2d 681, 688–89 (Del.Super.1989). In the present case the contracts all involved refrigeration units in Delaware and were made with the City of Wilmington. In addition, all parties have operated under the assumption that Delaware law applies, therefore this Court assumes Delaware has the most significant relationship to the contracts and thus, this Court finds that Delaware substantive law would be applicable to any contract claims in this case. However, the Court notes again that it is not now deciding whether the quasi-contractual claim in this case would be considered a contract or a tort claim for choice-of-law purposes. The purpose of the above discussion is merely to illustrate that whether the quasi-contractual claim is characterized as a tort or contract cause of action, the resulting choice of law is the same.

## V. DISCUSSION

### A. *The Contribution Crossclaim.*

#### 1. *Delaware Uniform Contribution Among Tortfeasors Law*

■ "It is well established in this circuit that the right to contribution among joint tortfeasors in diversity cases is a substantive right which is controlled by state law." *ICI America, Inc., v. Martin–Marietta Corp.*, 368 F.Supp. 1148, 1150 (D.Del.1974). There is a statutory right to contribution among joint tortfeasors in Delaware as codified in Delaware's adoption of the Uniform Contribution Among Tortfeasors Law. 10 *Del.C.* § 6301 *et seq.; McLean v. Alexander*, 449 F.Supp. 1251 (D.Del.1978), *rev'd on other grounds*, 599 F.2d 1190 (3d Cir.1979). The Delaware statute establishes a right of contribution only among "joint tortfeasors". 10 *Del.C.* § 6302(a). "Indispensable to a joint tortfea-

sor relationship is a 'common liability' either 'joint' or 'several' that two or more parties have to the person injured. Without this dual liability . . . no right of contribution can exist." *ICI America v. Martin–Marietta*, 368 F.Supp. at 1151.

■ Defendant City of Wilmington's original motion for summary judgment against the crossclaims argued that since this Court's September 29, 1992 Memorandum Opinion and Order dismissed Kiwifruit's claim against the City, the City could not share a common liability to the plaintiff with the other defendants, and thus the City could not, as a matter of law, be liable for contribution to codefendants under 10 *Del.C.* § 6301 *et seq.* In support of that contention, the City cited this Court's decision in *Walker v. Patterson*, 325 F.Supp. 1024 (D.Del.1971), and the opinion of the Delaware Superior Court in *Lutz v. Boltz*, 48 Del. 197, 100 A.2d 647 (Super.1953), both of which do stand for the proposition that absent a finding of common liability there is no right to contribution. However, as this Court informed the parties by letter dated February 10, 1993, (D.I.73), the City's argument overlooked a line of cases which specifically held that when a plaintiff's case against a joint tortfeasor is barred by a statute of limitations, that joint tortfeasor may still be liable to the remaining joint tortfeasors for contribution despite the fact that the plaintiff may no longer recover directly from the tortfeasor whose claim was time-barred. This Court's letter explained, in relevant part:

> Courts which have addressed the issue have distinguished between "common liability at the time of accrual and the absolute inability of an injured plaintiff to sue at any time." *Corning Glass Works v. Puerto Rico Water Resources Authority, Inc.*, 396 F.2d 421, 424 (1st Cir.1968). In the latter situation, where one party is immune from suit by operation of law, as is true in guest statute, spousal immunity, or workers compensation cases, courts have found that the party who is, by law, immune from suit cannot have shared a "common liability." In the former cases, however, where suit against one party is

merely barred by the statute of limitations, courts have found that the "common obligation which is essential to the right of one to contribution is the showing that the fellow tort-feasor *at some time* was liable with him for damage.... [There is] no reason why the law should let action or inaction of the injured party defeat a claim for contribution." *Keleket X–Ray Corporation v. United States,* 275 F.2d 167, 169 (D.C.Cir.1960) (emphasis added). The Third Circuit recently referred to the *Keleket* holding as the "general rule" stating, "it is the general rule that 'the fact that the statute of limitations has run against the original plaintiff's action does not bar a claim for contribution, since that cause of action does not arise until payment.'" *Sea–Land Service, Inc. v. U.S.,* 874 F.2d 169, 171 n. 1 (3rd Cir.1989) (quoting *Keleket,* 275 F.2d at 169.) *See also Markey v. Skog,* 129 N.J.Super. 192, 322 A.2d 513 (1974); Peter B. Kutner, *Contribution Among Tortfeasors: The Effects of Statutes of Limitations and Other Time Limitations,* 33 Okla.L.Rev. 203 (1980).

The cases cited by the City of Wilmington involved situations in which one party was, by law, immune from suit, and thus do not, standing alone, support the proposition that the City cannot be liable to the remaining codefendants for contribution merely because plaintiff's cause of action against the City is barred by the statute of limitations contained in the general tariff of the Port of Wilmington.

Accordingly, in order to succeed in the present motion for summary judgment against the contribution crossclaim, the City of Wilmington must demonstrate that it was originally immune from suit by Kiwifruit on some ground other than the statute of limitations and thus could not have shared a "common liability" with the remaining codefendants. As stated *supra,* the City has argued *ab initio* that it was immune from suit by plaintiff under the provisions of the County and Municipal Tort Claims Act, 10 *Del.C.* § 4011(a). The immunity from suit provided by the Municipal Tort Claims Act would be the original immunity necessary to preclude a finding that the City shared a common liability with the codefendants. Thus, if the

City were immune from suit by New Zealand Kiwifruit due to the Tort Claims Act, the City could not have been a joint tortfeasor and thus could not be liable to the codefendants for contribution. Since this Court decided the City's original motion for summary judgment solely on the basis of the statute of limitations provision of the general tariff, without ever reaching the issue of the Municipal Tort Claims Act, this Court's earlier decision does not provide any support for the City of Wilmington's present motion for summary judgment against the crossclaims. Accordingly, this Court finds it is now necessary to address the previously postponed arguments concerning the Tort Claims Act and its relevant exceptions.

## 2. The County and Municipal Tort Claims Act

10 *Del.C.* § 4011(a) states:

### § 4011 Immunity from Suit

(a) Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages. That a governmental entity has the power to sue or be sued, whether appearing in its charter or statutory enablement, shall not create or be interpreted as a waiver of the immunity granted in this subchapter.

10 *Del.C.* § 4012 delineates the exceptions to § 4011 and states:

### § 4012 Exceptions to immunity.

A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:

(1) in its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.

(2) In the construction, operation or maintenance of any public building or the appurtenances thereto, except as historic sites or buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation.

(3) In the sudden and accidental discharge, dispersal, release or escape of smoke, vapors, soot fumes, acids, alkalines and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

■ The codefendants argue that § 4012(1) and (2) (hereinafter the "equipment exception" and the "public building" exception) are applicable to the matter at hand thus defeating the City's claim to immunity. Since this Court finds that the "public building" exception is applicable to the case at hand, there is no need to address the equipment exception.

Although section 4012(2) creates a specific exception to a municipality's tort immunity for negligent acts occurring in the construction, operation or maintenance of public buildings, the statute itself never defines the term "public building." In addition, until recently, there were no "published opinions by the courts [of Delaware] defining or analyzing the meaning of the term 'public building' as it is used in 10 *Del.C.* 4012(2)." *Moore v. Wilmington Housing Authority*, 619 A.2d 1166 (1993). In the *Moore* case, however, the Delaware Supreme Court, in an *en banc* decision, finally addressed the "public building" exception. In outlining the appropriate inquiry courts should use to determine what structures constitute "public buildings" for the purpose of section 4012(2), the *Moore* court warned against borrowing definitions from other contexts, stating:

"The construction of the term 'public building' depends almost entirely on the context in which it is used, and as this varies in practically every case, no general rule as to the meaning of the term can be formu-

lated." ... Thus, statutes which define the term in contexts other than a tort claims act are of limited value....

*Moore* at 1169 n. 2 (citation omitted). Given the fact that the *Moore* decision represents the opinion of the highest court of Delaware concerning a statutory term not previously clearly defined, and given that decision's specific prohibition on borrowing definitions from other contexts, this Court will rely solely on the *Moore* opinion to determine whether the "public building" exception of section 4012(2) is applicable to the Port facilities at issue in this case.

In *Moore* the Delaware Supreme Court was asked to decide whether a leased residential housing unit owned by a public housing authority was a "public building" for purposes of the Tort Claims Act "public building" exception. In holding that it was, the court expressly rejected a "freedom of access" [5] test in favor of a test which looked at public policy and public benefit. The court held that for the purpose of construing the term "public" as it is used in 10 *Del.C.* § 4012(2), the

essential ingredients of the term ... include the public policy character of the building.... The public purpose ingredient of the definition leads to the conclusion that a building is necessarily one operated and maintained for a public purpose if its function is to benefit the public or the community.

*Moore* at 1174.

Accordingly, the Delaware Supreme Court looked to the "legislative creation, funding, and grant of responsibility" to the housing authority, in order to determine that the building owned by the housing authority was the result of a legitimate public policy objec-

---

**5.** The *Moore* court rejected a "freedom of access" test, which would require courts to determine whether the general public had access to the building in question, as being inconsistent with the intent of the general assembly in enacting the County and Municipal Tort Claims Act. Chief Justice Veasey, writing for the court, summarized that legislative intent as follows:

The objective of Subchapter II [Subchapter II is entitled the County and Municipal Tort Claims; Subchapter I is entitled State Tort Claims] was two-fold. First, because munici-

pal and county immunity had been essentially eliminated, the General Assembly extended immunity to those government entities. Second, the General Assembly was answering this Court's call to provide wronged private citizens with relief from the injustices that are inherent in the doctrine of sovereign immunity.... In essence, the General Assembly intended to strike a balance between the rights of individuals and the interests of society in general, as represented by municipal entities.
*Moore* at 1169.

tive and thus was a "public building" for the purposes of section 4012(2).

> The legislative creation, funding and grant of responsibility to a housing authority are for public purposes. Providing low-cost housing to needy citizens constitutes a legitimate public policy objective for a legislative body. Thus, the creation, funding and grant of authority to the WHA [Wilmington Housing Authority] in this case constitute a public purpose for the benefit of the community at large. That fact, coupled with other indicia of a public mission (e.g., operation and maintenance) combine to compel the conclusion that such a building is a "public building."

*Moore* at 1174.

As stated earlier, this Court is bound to follow the *Moore* decision. In keeping with the principles outlined by the *Moore* court, this Court also looks to the "legislative creation, funding and grant of responsibility" to the Port of Wilmington to determine whether the Port is operated for public purposes. The Wilmington City Charter grants legislative authority to the department of commerce to operate the Port of Wilmington. Section 4–400 of the Charter states:

> The department of commerce shall have the power and its duty shall be to perform the following functions:
>
> (a) *Promotion of commerce, industry and the Port of Wilmington.* It shall promote and develop the city's commerce and industry and encourage the increased use of the port and to this end shall make recommendations for the coordination of activities of departments, boards and commission of the city.
>
> (b) *Wharf, dock and harbor facilities.* The department shall itself, or by contract, maintain, improve, repair and operate city wharf, dock and harbor facilities; when authorized by the council, acquire, design and construct additional such facilities; and conduct necessary harbor cleaning, deeping, dredging and ice-breaking opera-

tions, and maintain and operate equipment for such purposes. The department may grant licenses for the use of city wharf, dock, harbor and marine terminal facilities. Wilmington City Code § 4–400.

As the above cited section of the City's Charter makes clear, the department of commerce has been given legislative authority to operate the Port in order to "promote and develop the city's commerce and industry and encourage the increased use of the port." In other words, the very language employed in the City Charter's grant of authority contains a clear declaration of its public policy objective: the promotion and development of commerce. Thus, just as the *Moore* court found that the creation, funding and grant of authority to the Wilmington Housing Authority constituted a public purpose for the benefit of the community at large, this Court finds that the City Charter's grant of authority to the department of commerce regarding the operation of the Port, and the Charter's specific provision that at least one of the purposes of that grant of authority is to promote and develop the city's commerce and industry, also constitutes "a public purpose for the benefit of the community at large." According to the standard set forth in *Moore*, such a public purpose compels the conclusion that the port warehouse is a "public building"[6] for purposes of section 4012(2). Thus, any negligent acts which occurred in the City's operation of the warehouse fall into the exception to immunity created by section 4012(2), and the City, in turn, may still be liable to codefendants for a claim of contribution for damage arising from those acts. Thus, this Court will deny the City's motion for summary judgment on the contribution crossclaim.

Although the Court will deny the City's motion for summary judgment on the contribution crossclaim, the Court finds it necessary to explain the very limited effect that decision will have on any judgment which may eventually be rendered against the codefendants. Such a discussion is necessitated

---

**6.** In its analysis, the *Moore* court distinguished between "public" and "building" and treated noun and adjective separately. However, the Court limited its decision to the meaning of the word "public" since no one was contending that the structure in question was a "building." Similarly, this Court need not address whether the warehouse is a building for the purposes of the public building exception to the Tort Claims Act, since none of the parties have raised that issue.

because the codefendants' briefs incorrectly state the principles of recovery under the Uniform Contribution Among Tortfeasors Law. 10 *Del.C.* § 6301 *et seq.* Codefendants Perley–Halladay and Devault have apparently confused the recovery available on an indemnification claim with the recovery available on a contribution claim.

 Codefendants state:

If the Court finds that the City is not immune from suit, the City may be found liable to the co-defendants as a joint tortfeasor. Consequently, if Perley–Halladay and Devault are found to be liable in any respect, they would be entitled to have the relative degrees of fault determined in accordance with Title 10 Chapter 63 of the Delaware Code and would be entitled to contribution from the City *for any amount they may be required to pay to the plaintiff.*

(D.I. 75 at 6; emphasis added.) Codefendants err in that they will not be entitled to contribution for any amount they may be required to pay to the plaintiff. It is indemnification which grants full reimbursement as the measure of recovery. Under the contribution statute, codefendants would only be entitled to any amount they may be required to pay to the plaintiff *beyond their pro rata share.*

10 *Del.C.* § 6302(b) states:

A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro-rata share thereof.

In addition, the Delaware courts have held that while the right to contribution attaches at the time of the negligence, the right to secure a money judgment for contribution is inchoate until the judgment debtor discharges more than his pro rata share of the common liability. *Fehlhaber v. Indian Trails, Inc.* 45 F.R.D. 285 (D.Del.1968), *aff'd,* 425 F.2d 715 (3rd Cir.1970).

 The codefendants have requested that the jury in this case determine the relative degrees of fault in accordance with 10 *Del.C.* § 6302(d). Accordingly, any judgment for plaintiff will reflect the appropriate degree of negligence of each codefendant. The plaintiff is precluded by this Court's earlier decision based on the statute of limitations from recovering for any negligence on the part of the City of Wilmington. To ensure that result, this Court will subtract the amount of damages, if any, which the jury determines is attributable to the City's negligence from the final judgment awarded to plaintiff. Thus, the remaining judgment will reflect only the negligence of the codefendants and each codefendant will have to pay the amount the jury has apportioned to it. The City's portion will be zero since it will have been deducted from the judgment.

Since no action for contribution may be brought until a party has paid more than its pro rata share, there is only a very limited possibility that the City will, in fact, be liable for contribution. The only circumstance in which such liability could arise is if one of the codefendants against whom a judgment were entered failed to pay that judgment. In that case the remaining codefendants would still be liable to plaintiff for the full amount of the judgment. In compensating for the missing codefendant, the remaining codefendants would in fact be paying more than their pro rata share. In that event, they could seek contribution from the City, but only for the amount which they had paid that exceeded their pro rata share, in other words, only for the amount which compensated for the missing codefendant. If, however, each codefendant pays its pro rata share, as required by law, no action for contribution against the City will exist.

**B.** *The Indemnification In Tort Cross-claim.*

As stated earlier, all three codefendants have cross-claimed against the City for indemnification in tort. The City has offered two arguments in support of its motion for summary judgment on this crossclaim. First, the City has argued that the crossclaim is barred by the Tort Claims Act. However, as this Court has just detailed at length, the City is not cloaked in the immunity of the Tort Claims Act because the alleged negligence occurred in a "public building" and thus the claim falls into one of the specif-

ic statutory exceptions to the immunity of the Tort Claims Act.

Second, the City has argued that there is no set of circumstances under which codefendants could be held liable to plaintiff for the City's negligence and thus the City can not be liable to codefendants for indemnification in tort. For the reasons stated below, this Court finds that codefendants are only entitled to a recovery based on indemnification in tort if they are in fact held liable for the City's negligence and this Court finds that the parties have failed to argue a single situation in which codefendants could be liable to plaintiff for the City's negligence. Thus, for the reasons set forth below, the Court will grant summary judgment to the City on the crossclaim of indemnification in tort.

■ "Generally, a right to indemnity arises by contract, although equitable grounds have been recognized." *Insurance Co. of North America v. Waterhouse,* 424 A.2d 675, 678 (Del.Super.1980). "A right to indemnity may arise through a contractual agreement, express or implied.... When required by the equities of a given situation, some courts will also imply a right of indemnity wholly independent of any contractual relationship." *Pierce Associates, Inc. v. Nemours Foundation,* 865 F.2d 530, 543 (3rd Cir.1988), *cert. denied,* 492 U.S. 907, 109 S.Ct. 3218, 106 L.Ed.2d 568 (1989). Although apparently no Delaware court has yet applied it, *id.* at 544, Delaware first recognized an equitable action for indemnification in *Ianire v. University of Delaware,* 255 A.2d

687 (Del.Super.1969), *aff'd,* 269 A.2d 52 (Del. 1970).

In the *Ianire* decision, Judge Bifferato characterized the principle behind the right to indemnification by stating:

> The area in which a party held liable for negligence may pass that liability on to another negligent party is closely circumscribed. It encompasses a group of special situations and relationships where it has seemed reasonable to impose an alternate responsibility on a party seen to have played the active role in the negligence situation in favor of one who is made answerable to the injured party, but whose part in the event is passive or arises from the effect of public policy, contract or status.

*Id.* Thus, courts discussing equitable indemnification often distinguish between "passive" and "active" negligence as well as between vicarious and direct liability.

In that same decision, Judge Bifferato also definitively outlined the factual situations which would support any claim for indemnification, stating:

> A joint tort-feasor may generally recover indemnity only in the following situations:
>
> (1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.
>
> (2) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.[7]

---

7. Perley–Halladay and Devault have rightly noted that the *Ianire* court misquoted the five situations. (Note the exact duplication with the exception of a typographical error of situations 2 and 4.) The Minnesota Supreme Court case, *Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 104 N.W.2d 843 (1960), which the *Ianire* court cited provided the following scenario as scenario 2:

> (2) Where the one seeking indemnity has incurred liability by an action at the direction, in the interest of, and in reliance upon the one sought to be charged.

*Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 104 N.W.2d 843 (1960).

Although the *Ianire* case is still good law in Delaware, this Court finds it necessary to note

that the *Hendrickson* case which it cites has been partially overruled by the Supreme Court of Minnesota. In an *en banc* decision in 1977 the Minnesota Supreme Court revisited the five situations outlined in Hendrickson and found that situation four was a joint tortfeasor situation rather than an indemnification situation and accordingly overruled the statement of the opinion which held that situation four would provide the basis for an indemnification claim. *Tolbert v. Gerber Indus., Inc.,* 255 N.W.2d 362 (Minn. Supr.1977). The *Tolbert* court found that the other four indemnification situations all involved scenarios in which the party seeking indemnity had incurred liability even though not personally at fault. Since this Court does not find situation four applicable to the crossclaim at issue, it does

(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

(4) Where the one seeking liability has incurred liability has incurred liability [sic] merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved.

*Ianire,* 255 A.2d at 687.

The City of Wilmington argues that there is no set of circumstances under which codefendants would be entitled to indemnity from the City. (D.I. 78 at 4.) This Court finds that a comparison of those five situations outlined in *Ianire* with the facts in this case confirms the City's conclusion.

■■■ The first situation allows indemnification when the party seeking it is merely vicariously liable for the negligence which has occurred. The classic example of vicarious liability is the employer who is liable for his employees' negligence under the doctrine of *respondeat superior.* Although it is the employee who was negligent, and it is his activities which caused the harm, the employer, because of his relationship to his employees, is responsible to third parties for the employee's actions. Equity dictates, however, that although the employer is responsible to the third party, the employer may, in turn, seek indemnification of the employee whose negligence actually caused the harm. The employee is seen as being "actively" negligent and the employer as "passively" negligent because the employer's only negligence was, in effect, not discovering or preventing the negligence of the employee for whose actions he must answer. The employer's negligence and ensuing liability derive from the employer/employee relationship.

The City of Wilmington argues, and this Court agrees, that the relationship between the City and the codefendants can never give rise to vicarious liability on the part of the codefendants for the City's negligence. In fact, any vicarious liability would run the other way. The City characterizes its relationship to the codefendants as that of a general contractor to subcontractors with the City in the role of general contractor. As the City effectively argues, the general contractor can be held responsible for the work and the negligence of the subcontractors but the subcontractors can not be held liable for the work or negligence of the general contractor. The reason for that conclusion is that the general contractor has the duty to oversee the work of the subcontractor and thus the general contractor can be liable to third parties for the subcontractor's negligence because the harm caused by that negligence is partially due to the general contractor's breach of the duty to supervise. Similarly, the general contractor's failure to discover or prevent the subcontractor's negligence is also, in some way, a breach of that same duty. As the City correctly demonstrates, the subcontractor has no such duty to discover or prevent the general contractor's negligence and therefore can not be held vicariously liable for the general contractor's negligence.

■■■ Although codefendants ostensibly disagree with the City's claim that there is no set of circumstances under which they, the codefendants, could be held liable for the City's negligence, the set of circumstances they present affirm rather than contradict the City's claim. Codefendants argue that they could be held vicariously liable for the City's "(1) negligent failure to discover or prevent the loss of New Zealand's kiwifruit; (2) negligent failure to safeguard, monitor or look after the kiwifruit." (D.I. 75 at 8.) The error in codefendants' argument is that, although the City might be held liable to plaintiff—if plaintiff's suit were not time-barred—for the "negligent failure to safeguard ... and the negligent failure to discover or prevent the loss of the kiwifruit," the codefendants can not be liable to plaintiff for that

not need to consider any potential impact the subsequent Minnesota decision in *Tolbert* might have on Delaware law.

negligence on the part of the City. The duty to "safeguard, monitor, and look after" as well as the "duty to discover or prevent loss" is, in effect, a duty to protect against the negligence of others. As the City correctly states, codefendants "had no duty to the plaintiff to 'safeguard, monitor or look after the kiwifruit' and therefore could not be liable to the plaintiff for the City's failure to do so." (D.I. 78 at 4.) In other words, the duties of codefendants are quite specific and while under certain circumstances the City might be found liable for "passive" negligence in not discovering codefendants' failure to adequately perform their duties, codefendants can only be found liable for their own direct or "active" negligence. There is no right to indemnity for the party who was actively or primarily negligent.

As stated earlier, *Ianire's* second factual situation appears to be a misquote which codefendants Perley–Halladay and Devault have remedied by directing the Court's attention to the *Hendrickson* case which *Ianire* cited. Although Perley–Halladay and Devault have directed the Court's attention to the corrected text, they have not argued, nor has McFoy argued, that it is in any way applicable. Thus, the Court assumes it has no relevance to codefendants' claim and need not address it.[8]

■ Situation three is also inapplicable to the facts of this case. Situation three would provide indemnification if codefendants incurred liability because of a breach of a duty owed to *them* by the *City*. The City's duty to "safeguard, monitor, or look after the kiwifruit" as well as its duty to "discover or prevent the loss of the kiwifruit," were duties it owed to the plaintiff, not to the codefendants.

Codefendants, Perley–Halladay and Devault, have argued that the City also owed them an implied duty of timely notification regarding the need for any repairs, which they breached. In their brief, codefendants termed that duty contractual or implied-in-contract, since it is grounded in the maintenance contract that the codefendants had with the City, and claimed that the City's breach of that duty gave rise to a claim for implied-in-contract indemnification. Accordingly, the Court discusses the alleged breach of that duty at greater length, *infra,* when it addresses Perley–Halladay and Devault's implied-in-contract indemnification claim.

■ Nevertheless, at oral argument, counsel for codefendants Perley–Halladay and Devault suggested that a breach of that duty might also give rise to an indemnification-in-tort claim, presumably in accordance with situation three. The Court finds, however, that the breach of such a duty would not, in this case, give rise to a claim by codefendants against the City for indemnification in tort. The Court makes such a finding based on the fact that codefendants cannot be liable to the plaintiff for damages arising from the City's breach of the duty to notify. In other words, if the City had a duty to notify the codefendants of the need to repair, and the City failed to so notify codefendants, the codefendants could not be found negligent in subsequently failing to make a repair. In short, if the City failed to notify codefendants of a need for repair, the City, not the codefendants will be found negligent. Since codefendants cannot be held liable to the plaintiff for the City's breach of its duty to timely notify, situation three is inapplicable and does not give codefendants a claim for indemnification in tort.

8. The Court notes that, in its opinion, situation two appears to be the only situation which would have been potentially applicable to the facts of this case. Situation two as originally set forth in *Hendrickson* provides for indemnification "where the one seeking indemnity has incurred liability by an action at the direction, in the interest of, and in reliance upon the one sought to be charged." It appears to this Court, that situation two is therefore the reverse of the *respondeat superior* situation and covers a situation best illustrated by an employee who incurs liability by doing his job exactly as dictated. If, for example, one of the codefendants had set the temperature of the units at below 32 degrees Fahrenheit, because the City had so instructed them, it appears to this Court that situation two would therefore give that codefendant a valid claim for indemnification. Apparently there is no evidence of such an instruction since none has been brought to the attention of this Court and none of the parties have argued a theory similar to that advanced by situation two.

The next factual situation outlined by Judge Bifferato in *Ianire* has, in fact, already been addressed in this Court's discussion of situation one's vicarious liability, and thus will be addressed only briefly now. Situation four is very similar to the employer/employee relationship discussed earlier, since it provides for indemnification for "liability incurred due to the failure to discover the misconduct of *the one from whom indemnity is sought*"—in other words, the City. Accordingly, situation four would only provide for indemnification if the codefendants were liable to plaintiff for failing to discover the City's negligence. As stated earlier, the codefendants had no duty to plaintiff to discover the City's negligence, only the City had a duty to discover codefendants' negligence, and thus, codefendants could not be held liable for breaching a duty they did not have. Accordingly, situation four has no applicability to codefendants' claim.

Finally, situation five provides indemnification when there is an express contractual clause to support it. Although the parties have failed to make any of the contracts a part of this Court's record, all parties agree that there is no express contractual indemnification clause to support codefendants' claim. Accordingly, none of the *Ianire* indemnity situations are applicable to codefendants' crossclaim for indemnity.

In addition, on a more practical level, the codefendants have requested that the jury in this case determine the relative degrees of fault in accordance with 10 *Del.C.* § 6302(d).[9] Thus, codefendants will have to litigate the issues of negligence among themselves in order for liability to be properly apportioned and any judgment for plaintiff will reflect the appropriate degree of negligence of each codefendant. As stated *supra*, since the plaintiff is precluded by this Court's earlier decision based on the statute of limitations from recovering for any negligence on the part of the City of Wilmington, any damages attributable to the City's negligence will be subtracted by this Court from the final judgment awarded to plaintiff. Thus, the remaining judgment will reflect only the negligence of the codefendants.

In summary, given that any judgment against the codefendants will not, as a matter of law, include damages attributable to the City of Wilmington, this Court finds no possible set of circumstances under which codefendants could be found liable for the City's negligence and thus find no grounds for an indemnification-in-tort claim. Accordingly, the Court will grant summary judgment to the City on that claim.

### C. The Implied–In–Contract Crossclaim.

As stated earlier, codefendants Perley–Halladay and Devault have also asserted implied-in-contract indemnification crossclaims. Perley–Halladay and Devault claim that the City "breached its implied contractual duty, given in exchange for the one-year equipment guarantee, to notify or inform Perley–Halladay and Devault of any malfunction or abnormal condition in the refrigeration equipment." (D.I. 75 at 10.) Delaware courts do recognize an implied-in-contract theory of indemnification. *Diamond State Tel. Co. v. University of Delaware*, 269 A.2d 52 (Del.1970), *aff'g* 255 A.2d 687 (Del.Super.1969). However, Delaware courts have clearly limited implied indemnification to situations in which no express indemnification exists. "When the parties to a contract have entered into a written agreement expressly setting forth one party's indemnity liability, there is no room for any enlargement of that obligation by implication." *Howard, Needles, Tammen & Bergendoff v. Steers, Perini & Pomeroy*, 312 A.2d 621, 624 (Del.1973).

As stated *supra*, the parties in this case have made only selected portions of the potentially relevant contracts a part of this

---

9. Section 6302(d) states:
 When there is such a disproportion of fault among joint tort-feasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tort-feasor shall be considered in determining their pro rata share.

While section 6302 is clearly part of the contribution among tort-feasor law, and thus not necessarily relevant to a discussion of indemnification, the effect of section 6302 is to require a factual determination of degrees of fault. It is that factual determination of fault which is relevant to a resolution of the indemnification claims.

Court's record. For that reason, this Court is relying on the representations made by the parties regarding the relevant provisions or lack of provisions in the contracts and this Court is taking any unrefuted allegations as true. The City states that its contract with Perley–Halladay contains an express indemnification clause "whereby Perley–Halladay agreed to indemnify, defend and hold the City of Wilmington harmless under certain circumstances." (D.I. 78 at 1.) Given that express indemnification clause, this Court, applying Delaware law, will not imply an indemnification provision between Perley–Halladay and the City. The fact that the clause in question runs from Perley–Halladay to the City only confirms that indemnification should not be implied. This Court understands the presence of a one-way indemnification provision to be the expression of the clear intent of the parties not to indemnify in the opposite direction. The presence of the indemnification clause demonstrates that the question of indemnification was clearly considered. The absence of a reciprocal provision is therefore assumed to be clearly intended.[10] Since Delaware courts have refused to enlarge situations in which parties clearly intended a certain type of indemnification, it is logical to assume they would refuse to create indemnification where the parties intended none to exist. Accordingly, this Court will grant summary judgment to the City on Perley–Halladay's crossclaim for implied contractual indemnification.

■ As to Devault's implied contractual indemnification claim, this Court finds the absence of the contracts a significant hindrance. This Court infers from varied statements in the briefs that there is no contract at all between Devault and the City, but rather Devault is under contract to Perley–Halladay. Although a Court might imply a duty to inform in a maintenance contract, and although courts have implied certain duties in the absence of any written contract, this Court fails to see, and no party has offered any reason, why the City would have a duty to notify a party with whom it had no contractual relation of the need to make a repair. This Court will not imply a duty to notify of needed repairs in the absence of a maintenance contract. The Court notes that none of the parties have even apprised it of the customary practice in which repairs were made. In other words, not only does this Court not know upon which party the contracts allocated the burdens of inspection and notice, but it does not know what constituted the common practice of the parties. Thus the Court, in the absence of any evidence or argument, will not imply a contractual duty on the City to notify Devault of the need for repairs. Accordingly, the Court will grant the City's motion for summary judgment against Devault's crossclaim for implied-in-contract indemnification.[11]

## VI. CONCLUSION

For the reasons set forth above, the Court will deny defendant City of Wilmington's motion for summary judgment against codefendants on the crossclaim of contribution but will grant the City's motion for summary judgment on all the indemnification crossclaims. An order will be issued forthwith in accordance with this opinion.

---

10. While the entire contract is not a part of the Court's record, codefendants have admitted that there is no express indemnification agreement by which the City agreed to indemnify Perley–Halladay.

11. As stated *supra,* McFoy has not made an implied contractual indemnification crossclaim.